### In re Petition of Marvin A. Pfenning and June V. Pfenning

[385 A.2d 1070]

No. 159-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed April 4, 1978

*John B. Harrington* and *Harold C. Sylvester*, Burlington, for Petitioners.

*Jon R. Eggleston* of *Kissane and Heald Associates*, St. Albans, for Respondents.

Larrow, J. Subject matter jurisdiction of the Public Service Board, under 30 V.S.A. § 201 and 30 V.S.A. § 203, is the sole question presented for review by the question certified from the Public Service Board. As the Board correctly ruled, determination of this question could well terminate the whole litigation, because if there is no jurisdiction the Board cannot grant either petitioners' prayer for permission to abandon the water system here in question or their alternative prayer for a certificate of public good and a rate increase. Interlocutory appeal of the Board's ruling in favor of jurisdiction (and refusing to adopt the contrary recommendation of its hearing examiner) was properly granted.

██ A preliminary procedural question suggests itself, which the parties have not seen fit to raise. The first action to surface here was a petition for declaratory judgment, brought to the Franklin Superior Court by the petitionees here Smith and wife, who claimed to be users of the water facility, against the petitioners Pfenning and wife, its claimed operators. The Pfenning petition to the Public Service Board followed

this action, and at first glance our holding in *City of South Burlington* v. *Vermont Electric Power Co.*, 133 Vt. 438, 344 A.2d 19 (1975) might seem to be involved. There we laid down a general policy, calculated to prevent resort to different tribunals with concurrent subject matter jurisdiction in an effort to secure a first and favorable result. We indicated that the tribunal first acquiring jurisdiction should exercise it, and that the second in point of time should defer to the first. We do not abrogate that policy; but it seems to us to be inapplicable here for two reasons. The first is that the parties have not raised the point, and the record before us seems to present no objection whatever to the action taken by the Public Service Board, except as to the substance of the ruling. Whatever the dispute on the merits, the manner of decision does not appear to be challenged. And, as we pointed out in *South Burlington, supra,* 133 Vt. at 443, an apparent exception to the general rule is where a second court can afford remedies not available in the first. Issuance of a certificate of public good, as well as the granting of a rate increase, assuming such relief to be available, would not be within the original subject matter jurisdiction of the superior court.

■ 30 V.S.A. § 203(3) gives the Public Service Board general supervision of companies other than municipalities engaged in the collecting, sale and distribution of water for domestic, industrial, business or fire protection purposes. 30 V.S.A. § 201 defines "company" to include individuals and partnerships. But the Smiths claim that, under the relevant chain of title, they are part owners as well as users of the system, that they have an interest in the land of the Pfennings. This, they say, brings the system within the rule we recognized in *Kelly* v. *Alpstetten Association, Inc.*, 131 Vt. 165, 167–68, 303 A.2d 136, 137 (1973), that the sale of water to customers not part of its ownership is the basis for Public Service Board jurisdiction. Their undisputed chain of title, they say, gives them a *profit a prendre.* Our review of that chain, and the undisputed fact that the source of the water itself is springs within the public highway limits, lead us to the conclusion that this claim is untenable. We answer the certified question as to the existence of subject matter jurisdiction in the Public Service Board in the affirmative.

■■ The general principle of *Kelly* v. *Alpstetten, supra,* seems to be recognized by both parties. If the users of the particular water system are also its owners, it does not have the "public nature" that brings it under statutory regulation. Consent to jurisdiction is not required; it is imposed by legislative authority. *Krulee* v. *Huyck & Sons,* 121 Vt. 299, 303, 156 A.2d 74, 77 (1959). Under the cases cited, if the users have in fact no recognized property right in the system, the entity furnishing the water is a public water company under 30 V.S.A. § 203(3). The case turns upon the rights derived from the respective chains of title.

Four parties appear to be served from the common source, all of whom derive title from a common grantor. In most instances the owners are husband and wife, but the singular name will be used for purposes of brevity. The common grantor, Kinney, in 1953 conveyed off a lot to Leahy, a present user. The deed clause relating to water reads as follows:

> There is also conveyed herewith to the grantees, their heirs and assigns, *a right to water*, which water is being pumped from the Kinney residence above mentioned providing, however that the said grantees their heirs and assigns pay to said Kinneys, their heirs and assigns the sum of twenty-four ($24.00) dollars per year in lieu of any and all charges. It being understood between the parties hereto and binding on their heirs and assigns that the grantees, their heirs and assigns may cancel *this agreement relative to water* by written notice of their intentions so to do, which notice will be sent to the grantors or their heirs and assigns and filed in the Town Clerk's office. This agreement is intended to run with the land. (Emphasis added.)

In 1954, Kinney conveyed off another lot to Bartlett, lying east of the Leahy lot. The clause relating to water was substantially identical, except for words clarifying that cancellation could not be by the grantors.

In 1955, Kinney conveyed off to Cheeseman the balance of the Blouin property (from which the other lots had come), excepting the Kinney and Leahy lots and several others also previously conveyed. Noteworthy as evidencing the under-

standing of the parties was a reference in the encumbrance clause to "spring rights for the benefit of the so-called George Howard property" and "well rights by the owners of the so-called Martin and Paulette properties." The Leahy and Bartlett rights were described as "rights to be furnished water by [sic] owners of the Leahy and Bartlett properties." The common grantor, from the terms employed, evidently recognized a distinction between spring and well rights and a right to be furnished water.

In 1963, Cheeseman conveyed to petitionees Smith his remaining property in the area, reserving his home lot. In the basement of the home is the cistern, into which flows water from under the highway, and the pump which pumps it from the cistern to the users. The water clause in this deed reads as follows:

> The grantor by this conveyance agrees to *furnish water* to the barn located on the premises herein conveyed and the grantees agree to pay for the use of said water the sum of twenty-four ($24.00) per year. The right to use the water shall be *reasonable use only* and *in common with others already supplied by the grantor.* (Emphasis added.)

Again, in the encumbrance clause, reference is made to the Howard "spring rights" and the Martin and Paulette "well rights." The Leahy and Bartlett rights are referred to as "rights to be furnished water."

In 1965, petitioners Pfenning came into the title, when Cheeseman conveyed to them the home lot he had reserved in the Smith deed. No reference to the water system appears anywhere in the deed, but they make no claim that this omission relieves them of any liability.

From the foregoing chain of title, it appears quite clear that there was never any intent to convey to the present users, apart from the Pfennings, anything more than a contract right to be furnished water, as described in the several deeds. The distinction appears to have been quite clear in the mind of the common grantor and his successor. Spring rights, where granted, were described as such. Well rights, where conveyed, were so described. Those rights were, quite evi-

dently, to have water from a specific source. Apart from the admitted allegation that the source of the water here in question was not on the property of any of the parties but within the highway limits, so that no one had anything to convey, the language of the grant does not refer to any particular source. The undertaking to furnish could be met, as far as the law is concerned, from any source whatever. The petitionees have no property rights in any spring, well, stream, or other source. Their only right is to have water supplied to them, from any source available to the petitioners. Apart from the economic burden, petitioners could supply the petitionees by tank truck and be within the terms of their undertaking.

The question certified by the Public Service Board is: "Does the Public Service Board have jurisdiction to set rates for, and otherwise supervise, the water system in this case?" It is answered in the affirmative.

*Certified question answered in the affirmative, and cause remanded.*