## In re Crushed Rock, Inc.

[557 A.2d 84]

No. 86-479

Present: **Allen, C.J., Peck and Dooley, JJ., and Barney, C.J. (Ret.) and Keyser, J. (Ret.), Specially Assigned**

Opinion Filed December 30, 1988

*Abell, Kenlan, Schwiebert & Hall, P.C.*, Rutland, for appellant Crushed Rock, Inc.

*Gregory S. Clayton* of *Downs Rachlin & Martin*, St. Johnsbury, for appellant Pike Industries, Inc.

*William J. Bloomer*, Rutland, for Appellee Town of Clarendon.

*Sullivan, Sullivan & Enzor*, Rutland, for Appellees McCormack, Sokolich and Witham.

*Jeffrey L. Amestoy, Attorney General,* and *Mark J. Di Stefano, Assistant Attorney General*, Montpelier, for amicus curiae Environmental Board.

**Dooley, J.** This is an appeal by Crushed Rock, Inc. (Crushed Rock) and Pike Industries, Inc. (Pike) from the decision of the Environmental Board to revoke an Act 250 permit that had been issued to Crushed Rock. The permit allowed Crushed Rock to extract sand, gravel and stone and run a quarrying operation on land it owns in the Town of Clarendon. Actually, the quarry was being run by Pike under a lease with Crushed Rock. On appeal, the appellants allege that the Board prejudged the revocation issue, failed to afford them a hearing on the remedy to be imposed for the violations it found and had insufficient evidence to revoke the permit. We reject the appellants' first contention but find error on the second contention and, accordingly, reverse for further proceedings without reaching the third contention.

Crushed Rock received its permit in 1984. Based on certain representations from Crushed Rock, the District Environmental Commission made findings on the way the quarrying operation would be conducted and its environmental impacts. For example, the commission found with respect to blasting that: "There will

be a maximum of 250 lbs. of explosives per delay with a maximum of 1000 lbs. per shot." For some period, Crushed Rock operated under the permit and apparently abided by its conditions and stayed within the limits set forth in the findings of fact.

In 1986, Crushed Rock leased the gravel and quarry operation to Pike and assigned to Pike its Act 250 permit. Pike began operating the quarry to extract rock as a sub-base for a new road it was building under contract with the state. In May of 1986, Pike obtained an amendment to the Act 250 permit to expand the hours of operation. It sought a second amendment to operate an asphalt plant on site but ran into extensive community opposition based in part on allegations that Pike was violating conditions imposed on the Act 250 permit and operating outside of limits contained in the findings of fact.

On August 19. 1986, a group of surrounding landowners (petitioners) filed a petition with the Environmental Board alleging that the conditions of the Crushed Rock Act 250 permit were being violated and requesting that it be revoked. A prehearing conference on the petition was held by the Board chairman on August 29th, resulting in a September 17th hearing before the full Board. The prehearing conference order specified that the hearing would deal with the grounds for revocation first and, if grounds for revocation were found, would proceed to "testimony and oral argument as to whether revocation or some other remedy is appropriate at this time."

Before the hearing, the Board acting through the Vermont Attorney General brought an action in the superior court against both Pike and Crushed Rock seeking a declaratory judgment that defendants had violated the terms of the Act 250 permit, an injuction against "blasting and operating the quarry contrary to the terms of the permit" and a civil penalty of $10,000 for each intentional violation of the permit. The complaint alleged that defndants had violated the limits on blasting, truck operations and the amount of rock extracted, and that the violations were intentional. The parties stipulated to a temporary restraining order prohibiting all blasting.

The filing of the superior court action led to complications in the revocation proceeding. Crushed Rock asked the Board to stay the revocation hearing and, when the Board refused, attempted unsuccessfully to have the superior court enjoin the Board from going forward. During the hearing, Crushed Rock moved to dis-

qualify the Board, arguing that the Board's involvement in the superior court proceeding meant that it had prejudged the issues in the revocation proceeding. The Board denied the motion.

After the evidence was taken on the alleged violations of the permit, the Board asked for offers of proof on a proper remedy if permit violations were found. Both Crushed Rock and Pike made offers of proof. The Board recessed and returned to render an oral decision that the permit conditions had been violated and the permit would be revoked. A memorandum decision was issued the next day revoking the permit because of "repeated violations" of the limits set forth in the permit.

Approximately three weeks later, the Board issued extensive findings of fact and conclusions of law. The Board found that the quarry operator exceeded the permit limit on explosive per shot and the limit on explosive per delay. It found that the operator blasted outside the permitted days and hours on a number of occasions and extracted more gravel in 1986 than the permit allowed. Finally, the Board found that the truck traffic from the quarry exceeded the maximum traffic volumes and that, at least prior to mid-August, trucks were not covered to minimize fugitive dust. Based on these findings, the Board concluded that both Crushed Rock and Pike had violated the conditions attached to the Act 250 permits. It further concluded that revocation of the permit was the proper remedy because of the substantial and continuing nature of the violations, the impact of the violations, the financial benefits that Crushed Rock and Pike had obtained and the lack of corrective action taken in the face of complaints by neighbors and the town.

The Board also detailed its decision on the disqualification motion. It found that the superior court proceeding was necessary to prevent further blasting while the administrative proceeding was pending. It stated that the Board did not "predetermine that violations had occurred or that revocation was the appropriate remedy if violations had in fact occured." It concluded that the Board had to go to court because it lacked any alternative means of taking summary action when faced with allegations of violations and substantial harm.

The first issue raised on appeal — that the Board prejudged the permit revocation question by bringing the injunction action — is an umbrella under which appellants gather four theories — denial of due process, violation of Chapter II, § 28 of the Vermont

Constitution, violation of the Code of Judicial Conduct and violation of 12 V.S.A. § 61. After setting forth the relevant Act 250 statutes, we analyze these theories in order.

Two statutes are relevant to the first appeal issue. 10 V.S.A. § 6090(c) provides that: "A permit may be revoked by the board in the event of violation of any conditions attached to any permit or the terms of any application, or violation of any rules of the Board." It was under this statute that the Board acted in conducting the revocation proceeding and revoking the permit. 10 V.S.A. § 6004 provides:

> In addition to the other penalties herein provided, the board may . . . institute any appropriate action, injunction, or other proceeding to prevent, restrain, correct or abate any violation of this chapter, or the rules promulgated under it or the terms or conditions of any permit issued under it . . . .

It was under this statute that the Board brought the action in superior court to enjoin violations of the permit.

Appellants' argument is that the two proceedings are such that the bringing of the superior court action necessarily means that the Board has prejudged whether permit violations were present so that the Board can no longer act as a fair and impartial decision-maker in the revocation proceedings. Thus, appellants argue that the continuation of the revocation hearing denied appellants' right to an unbiased decision-maker. Since the whole Board must be disqualified under appellants' view, the necessary consequence of appellants' theory is that petitioners' motion to revoke the Crushed Rock permit must be denied since no adjudication body is available to hear the petition.

Most of appellants' argument is centered around the first theory — that the Board's actions deny to appellants due process of law. The parties agree that the critical precedent to appellants' argument is *Withrow* v. *Larkin,* 421 U.S. 35 (1975), although they disagree on the application of *Withrow* to this case. *Withrow* involved a constitutional attack on Wisconsin's procedures for discipline of licensed physicians. The Wisconsin procedures started with a closed investigatory hearing which could result in a warning or reprimand or a finding of probable cause to bring a criminal prosecution or action to revoke the physician's license. The physician and his attorney could attend the investigatory hearing.

In *Withrow,* this hearing was held and resulted in a finding of probable cause to believe the physician had violated criminal provisions and probable cause to revoke the physician's license. Based on these findings the Wisconsin Medical Examining Board gave notice of a contested hearing to determine whether the physician engaged in prohibited acts and, if he did engage in such acts, whether he would be temporarily suspended from practice. It also directed the filing of criminal proceedings. At that point, the federal court enjoined further proceedings finding that the procedure denied the physician due process of law since the board was no longer an independent decision-maker since it had investigated the charges and presented them for prosecution.

While accepting that a biased decision-maker would offend due process, the Court in *Withrow* indicated considerable skepticism about the claim that "the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias . . . ." 421 U.S. at 47. In the Court's view, the argument ran up against a presumption of honesty and integrity. *Id.* After reviewing the Court's precedents and examining the way administrative agencies work in practice, the Court held that the processes used by the Wisconsin board "do not in themselves contain an unacceptable risk of bias." 421 U.S. at 54. It found that the mere exposure to evidence presented in the nonadversarial investigative procedures was insufficient to demonstrate unfairness especially since the investigatory process was open to the physician and the physician could present "[n]o specific foundation" for a claim of actual prejudice. 421 U.S. at 55. Further, it found that prehearing finding of probable cause, based on findings of the commission of prohibited acts, did not create an "intolerably high" risk of prejudgment or bias since the ultimate decision would involve a different standard of proof and full examination of the evidence. 421 U.S. at 57. The Court concluded with a caveat:

> That the combination of investigative and adjudicative functions does not, without more, constitute a due process violation, does not, of course, preclude a court from determining from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high.

421 U.S. at 58. See also *Hortonville Joint School Dist. No. 1* v. *Hortonville Education Ass'n,* 426 U.S. 482 (1976).

For analytical purposes, it is helpful to change the facts before us temporarily to look at a situation more similar to that in *Withrow.* It is possible that the powers granted to the superior court by 10 V.S.A. § 6004 (injunctions to restrain violations of a permit) and § 6006 (civil penalty) could have been placed in the Board to exercise after hearing. That is, the statutory scheme could have allowed the Board to restrain violations of permits and impose civil penalties. In such a case, it is clear under *Withrow* that the Board could have brought a separate proceeding for a restraining order and penalty or included requests for this relief in the license revocation proceeding. As in *Withrow,* the mere fact that the Board had initiated the proceeding after determining that there was sufficient cause to believe that the permit-holder had violated the permit would not create an unacceptable risk of bias to overcome the presumption of honesty and integrity. See also *In re Desautels Real Estate, Inc.,* 142 Vt. 326, 333-34, 457 A.2d 1361, 1364-65 (1982) (rejecting argument that board cannot be "investigators, prosecutors and judges"). Thus, the issue before us is whether it makes any difference for due process purposes whether the proceedings are initiated in a court rather than in the agency.

Appellants argue that it makes a difference because the Board must determine that there has been a violation, and that it was willful, before it could bring the court complaint in this case. Appellants point to the obligations of parties under V.R.C.P. 11 to file pleadings only if they are "well grounded in fact and . . . warranted by existing law or a good faith argument for extension . . . of existing law . . . ." Appellants add that the Board could face monetary sanctions for violation of Rule 11 and, therefore, it has acquired a pecuniary interest in the outcome. We see little difference in the obligation imposed upon the Board as a litigant and the obligation of fair dealing it would necessarily assume if it initiated a proceeding before itself. In fact, in *Withrow,* the administrative board initiated a criminal proceeding by reference to a prosecutor as well as commencing a license suspension proceeding. Nor are we convinced that the Board has a greater pecuniary interest when it goes to court — it could in any event face a monetary risk if it brought a wholly groundless administrative proceeding. In summary, we do not believe that the risk of bias is

increased because the Board goes to court rather than initiating a proceeding it will adjudicate.

On this point we are persuaded by the holding in *Blinder, Robinson & Co. v. Securities & Exchange Commission*, 837 F.2d 1099 (D.C. Cir. 1988), a factually similar case. In *Blinder*, the SEC brought an action against a securities broker-dealer (defendant) for violating antifraud provisions of various securities acts. The complaint sought injunctive relief. The SEC also began an administrative proceeding for sanctions including suspending the defendant's right to practice. The SEC prevailed in its litigation and further found, after hearing, that sanctions were appropriate. The defendant appealed alleging that the SEC had become the judge of its own claim and thus denied him due process of law. The court held that *Withrow* controlled and rejected the argument that it makes a difference that the agency litigated in court rather than bringing an administrative proceeding:

> We are at a loss to discern a meaningful distinction in the suggested difference. Whether the adversarial proceeding is before an agency-designated ALJ or a federal district judge, the relationship obviously remains one of adversariness between agency and opponent. Indeed, if anything the difference cuts against [defendant's] position, because he was afforded the not insubstantial advantage of the neutral forum provided by an Article III court, with its attendant procedures and protections (including the rules of evidence and procedure) that may not obtain in an agency adjudication.

837 F.2d at 1106. See also *PATCO v. Federal Labor Relations Authority*, 685 F.2d 547, 567 (D.C. Cir. 1982) (in proceeding to decertify union, no due process violation when adjudicators met with prosecutor to approve filing injunction action against strike called by the union).

Even if the Board's filing of the court action could create a due process violation, there are a number of other factors in this case that undercut the position of Crushed Rock and Pike. As the hearing unfolded before the Board, it became clear that there were no factual disputes. The only real issue was whether the actions of Pike could be found to be permit violations when the permit contained no limits on blasting, truck traffic and the like. The limits were contained in representations made by Crushed Rock in order to obtain the original permit and in findings of fact

of the District Environmental Commission. The petitioners alleged, and the Board found, that Pike's activities violated condition 1 of the permit, which required that the project "be completed as set forth in Findings of Fact . . . in accordance with the plans and exhibits." Crushed Rock and Pike disputed this position before the Board but have not appealed the merits of the Board's finding that they violated the permit. Thus, appellants have to base their bias allegation on a prejudgment of the law, not a prejudgment of fact.

The precedents are clear, however, that a prejudgment of the law does not normally rise to a due process violation. See 3 K. Davis, Administrative Law § 19.2, at 372 (2d ed. 1980) ("The law is entirely clear that an announced previous position about law or policy is not a disqualification for exercise of judicial power."). In *FTC* v. *Cement Institute,* 333 U.S. 683 (1948), the Supreme Court dealt with an allegation of bias based on a study done by the FTC and submitted to Congress concluding that a particular pricing system in the cement industry was an antitrust violation. The defendant, who used that system and was found in violation of antitrust laws by the FTC, argued that the Commission had prejudged the issue to the point that it could not conduct a fair proceeding. The Court disagreed, noting that a prior position based on an ex parte inquiry could not be equated with an "irrevocably closed" mind. *Id.* at 701. See also *Ash Grove Cement Co.* v. *FTC,* 577 F.2d 1368, 1376-77 (9th Cir. 1978). Even if the Board prejudged the legal issue in this case, the appellants have full access to this Court for review of that legal issue. See *Wolkenstein* v. *Reville,* 694 F.2d 35, 43-44 (2d Cir. 1982). They seek to parlay that prejudgment into a total disqualification of the Board from revoking the permit while failing to seek review of the underlying legal issue. There can be no due process violation in such circumstances.

A second reason is that this case has almost none of the personal intermixing of roles that normally is a hallmark of a due process violation. Compare *Bruteyn* v. *State Dental Council & Exam. Bd.,* 32 Pa. Commw. 541, 549-50, 380 A.2d 497, 501-02 (1977); *La Petite Auberge, Inc.* v. *Rhode Island Comm'n for Human Rights,* 419 A.2d 274, 285 (R.I. 1980) (must be evidence "same individuals are involved in the building of an adversary case"); *Burhoe* v. *Whaland,* 116 N.H. 222, 224, 356 A.2d 658, 659 (1976) (same person investigated case, presented case, cross-ex-

amined witnesses and decided case). While the Board apparently authorized the court action, the action was pursued by the attorney general. The proceeding before the Board was initiated by parties who were represented by counsel and presented the case for revocation. The Board was advised by its staff. Although a representative of the attorney general was present at the hearing, there is no indication that the representative participated in any way. The chair of the Board stated on the record that only he and Board staff had any conversations with the attorney general's office.

Finally, Crushed Rock and Pike have based their case for disqualification almost solely on appearances with no factual development of the actual involvement of the Board members in the court suit. They made their disqualification motion at the beginning of the revocation proceeding relying solely on the fact of the suit. Apart from the statement of the chairman referred to above and the statement in the findings for the revocation case that the Board acted only to maintain the status quo and "did not predetermine that violations had occurred or that revocation was the appropriate remedy if violations had in fact occurred," there is no factual development in this case. We do not believe that the presumption of honesty and integrity found determinative in *Withrow* can be so lightly overcome, especially if we were to accept appellants' argument that no revocation proceeding could go forward. See *In re Judy Ann's Inc.*, 143 Vt. 228, 233-34, 464 A.2d 752, 755-56 (1983)

For the above reasons, we hold that the Board's initiation of the court suit against appellants did not create a due process barrier to its going forward with the revocation case.

■ Appellants next argue that the dual involvement of the Board in the court action and the revocation proceeding violated Chapter II, § 28 of the Vermont Constitution. That section is within the part of the Constitution on the "Judiciary Department" and provides that within "Courts of Justice" justice shall be "impartially administered, without corruption or unnecessary delay." We need go no further with this argument than to find that ch. II, § 28 does not apply to the Environmental Board, a part of the executive branch of government. Under our Constitution, the three branches of government — legislative, executive and judicial — are "separate and distinct" so the powers and limits on powers applying to one do not apply to the others unless

the Constitution so provides. See Vermont Constitution ch. II, § 5 (separation of powers provision). Chapter II, § 28 is clearly part of the provisions applying to the judicial part of government. It has no applicability to the Environmental Board.

■ We have similar difficulties with appellants' third argument — that the Board's action in this case violated the Code of Judicial Conduct, Adminstrative Order No. 10. The Code was adopted by this Court to serve as the standard for ethical conduct for judicial branch officers. See Code of Judicial Conduct, A.O. No. 10, Canon 8 (Code is applicable to an "officer of a judicial system"); Rules of Supreme Court for Disciplinary Control of Judges, Rule 2(1) (disciplinary rules applicable for violations of Code of Judicial Conduct). It was adopted pursuant to our power to adopt a "code of judicial ethics which shall be binding on [judicial] officers for disciplinary purposes." 4 V.S.A. § 3. See also Vermont Constitution ch. II, §§ 30, 36 (disciplinary authority of Supreme Court). While the Legislature may choose to apply the Code of Judicial Conduct to those with adjudicatory powers in the executive branch, we find no indication that it has chosen to do so. Therefore, the Code of Judicial Conduct does not apply to the Environmental Board.

■We have different difficulties with appellants' final argument against the Board sitting in this case. They argue that the Board's action violated 12 V.S.A. § 61(a), our statute requiring disqualificatipon for interest of judicial officers, jurors and others acting in a judicial capacity. We agree that the statute applies to the Environmental Board members. See *In re State Aid Highway No. 1, Peru. Vt.,* 133 Vt. 4, 9, 328 A.2d 667, 670 (1974). We do not agree, however, that it applies to situations where official actions of the Board authorized by statute are alleged to result in the total disqualification of all Board members to act in a judicial capacity. By its terms, the statute requires disqualification where the person acting in a judicial capacity "is interested in the event of such cause or matter." See 12 V.S.A. § 61(a). We hold that this terminology must be interpreted consistent with the *Withrow* analysis so that the mere combination of functions does not make the adjudicator "interested" and subject to disqualification. To hold otherwise would require us to prohibit common combinations of functions specifically authorized by the Legislature. This construction of § 61 would be irrational, and we therefore reject it. See, e.g., *Lubinsky* v. *Fair Haven Zoning Board,* 148 Vt. 47, 50,

527 A.2d 227, 228 (1986) (construe statute to avoid "unreasonable or unjust results"); *State* v. *Rice*, 145 Vt. 25, 34, 483 A.2d 248, 253 (1984) (avoid construction "which leads to absurd or irrational results"). The combination of functions exercised by the Board in this case does not violate § 61(a).

For the above reasons, we hold that the Board was not disqualified to act on the petition for revocation of the Crushed Rock permit in this case. Accordingly, we must consider appellants' second grounds for reversal— that the Board failed to give them the opportunity to offer evidence in support of their position that the permit should not be revoked.

As noted above, the chairman of the Board held a prehearing conference which led to a prehearing order specifying that the proceeding would go forward in two stages, with the first devoted to whether the appellants had violated the permit and the second devoted to the remedy if grounds for revocation were proven. As to the second phase, the order specified "the Board will hear testimony and oral argument as to whether revocation or some other remedy is appropriate at this time." Following the first day of the hearing, the Board issued a recess order which again specified that the Board would hear further "evidence and argument" if it found one or more violations of the permit. The evidence and argument was to go to the impact of the violations as well as the remedy to be imposed. During the hearing, the chairman enforced the prehearing and recess orders by limiting evidence to the issue of violation and excluding evidence that went to the remedy to be imposed for a violation.

Following the evidence on violation, the Board asked each party to make an offer of proof on the remedy to be imposed if the Board found a violation. The purpose of the offer was not clearly specified. To an extent, each of the appellants made such an offer within the five minute limit set by the chairman. The Board then deliberated and announced that it had found violations and decided to revoke the permit. It stated that it had accepted the offer of proof by Crushed Rock and by Pike but those offers were not going "to change the decision." In its written decision, the Board found a clear threat of irreparable harm to public health, safety, or general welfare or to the environment because of the violations as well as repeated violations and determined, under the circumstances of the case, that the permit should be rescinded with no opportunity to correct the violations.

The Administrative Procedure Act, 3 V.S.A. § 809(c), provides that: "[o]pportunity shall be given all parties to respond and present evidence and argument on all issues involved." We have emphasized in the past the right of the parties to offer evidence. See *Fairchild* v. *Vermont State Colleges,* 141 Vt. 362, 366, 449 A.2d 932, 934 (1982) (Vermont Labor Relations Board must "recognize the right of parties to present witnesses, give evidence, and examine witnesses."); *In re Vermont Public Power Supply Authority,* 140 Vt. 424, 429, 440 A.2d 140, 141 (1981) (opportunity provided by § 809(c) is "important because the Board's decisions must be based on the evidence"). An instructive case on this point is *In re Central Vermont Public Service Corp.,* 141 Vt. 284, 449 A.2d 904 (1982), where the Public Service Board excluded evidence offered by the utility in support of a particular method of valuing purchased power costs. The Board excluded the evidence because it concluded as a matter of law that it would not accept the alternative valuation method. This Court reversed holding that it was the duty of the Board to take the evidence and to determine the proper valuation method based on the entire record. *Id.* at 291, 449 A.2d at 908-09. The Court noted that "the essence of the Board's inquiry should have been a careful sifting of the evidence offered by both sides . . . ." *Id.* at 291, 449 A.2d at 909.

We cannot accept in this case that the offer of proof gave to appellants the opportunity to "present evidence and argument" required by 3 V.S.A. § 809(c). They insisted on their right to present evidence and were told repeatedly that they would have that right. Both the prehearing order and the recess order specified their right to offer evidence, and these orders controlled the subsequent course of the proceedings. Cf. V.R.C.P. 16 (pretrial order "controls the subsequent course of the action"). The Board did not rescind these orders or disclose that it would make its remedy decision solely on the offers. The offers were relatively brief because of the Board-imposed time limit. The Board's decision was in an area of substantial discretion. The procedure was inconsistant with "a careful sifting of the evidence offered by both sides" as required by *In re Central Vermont Public Service.*

For the above reason, we conclude that the appellants were denied their right under 3 V.S.A. § 809(c) to offer evidence on the remedy to be imposed for breach of the permit. Therefore, the revocation order must be vacated and the appellants provided a

new hearing solely on the remedy to be imposed for breach of the permit. Because we have found a violation of the statute, we need not consider appellants' due process argument. Since the Board must hold a new hearing, we also need not consider the argument of Crushed Rock that sufficient grounds are not present to warrant revocation of the permit.

*Vacated and remanded.*