## Secretary, Agency of Natural Resources
## v. Upper Valley Regional Landfill Corporation, Barker Sargent Corporation, Inc., Frank L. Barker, Jr., and Robert MacNeil TRASH$_2$O, Intervenor

[705 A.2d 1001]

No. 96-369

Present: **Gibson, Dooley, Morse and Johnson, JJ., and Allen, C.J. (Ret.),** Specially Assigned

Opinion Filed November 7, 1997

*Jeffrey L. Amestoy*, Attorney General, *J. Wallace Malley, Jr.*, Acting Attorney General, *John W. Kessler*, Assistant Attorney General, and *Victoria R. Parra*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*Robert E. Manchester, Manchester Law Offices, P.C.*, Burlington, for Defendants-Appellants.

*Joe Bivins*, Post Mills, for Intervenor-Appellee and Cross-Appellant TRASH$_2$O.

**Gibson, J.** Defendants Upper Valley Regional Landfill Corporation, Barker Sargent Corporation, Inc., Frank L. Barker and Robert MacNeil appeal from an order issued by the Secretary of the Agency of Natural Resources (ANR) that directed corporate defendants to

perform closure and post-closure operations at its landfill in Post Mills, Vermont. Defendants contend that (1) the hearing officer erred by denying defendants' motion for his disqualification based on a conflict of interest, and (2) the Secretary does not have subject-matter jurisdiction because the Attorney General had previously instituted enforcement proceedings in superior court. Intervenor TRASH$_2$O (Thetford Residents Advocating Safe H$_2$O), a citizen environmental group, cross-appeals, arguing that the Secretary erred by (1) ruling that contingent sanctions are not available under 10 V.S.A. § 6610a(c)(1), (2) failing to rule on all the parties' proposed findings as required by 3 V.S.A. § 812(a), (3) providing less protection than previous land use permits in violation of 1993, No. 208 (Adj. Sess.), § 8, and (4) improperly dismissing individual defendants Frank L. Barker and Robert MacNeil. We affirm (1) the order denying the motion for disqualification of the hearing officer, (2) the holding that ANR has concurrent jurisdiction to pursue enforcement proceedings, (3) the ruling that contingent sanctions are not available under 10 V.S.A. § 6610a(c)(1), and (4) the dismissal of Robert MacNeil. Because the Secretary failed to consider and rule on the findings proposed by the State and intervenor, and because such findings could have an impact on the remaining issues, we vacate the remaining portions of the Secretary's order and remand the matter for rulings on those findings and entry of a new order.

In 1971, Barker Sargent Corporation was granted an Act 250 permit that authorized construction and operation of a landfill in Post Mills, Vermont. The landfill began operation in 1974. The Act 250 permit expired in January 1986, but the landfill continued operating without a permit until 1989 when the district commission denied its application for a new permit. The Attorney General then obtained a consent order requiring the landfill to cease operations, and the landfill has not operated since September 1989. Subsequently, the landfill applied for but was denied an Act 250 permit in 1991; it has filed no new application since that time.

Legislation enacted in 1977 required landfills to obtain disposal-facility certification from the Agency of Environmental Conservation (AEC), the predecessor to ANR. See 1977, No. 106, § 1 (codified at 10 V.S.A. § 6605). In 1981, the landfill obtained certification, requiring it to provide an alternative water supply for neighbors whose water supply had been contaminated by the landfill and to have the new system completed by 1984. The new water supply was not operational until 1988, however, and two households that requested connection to

the system have not yet been connected. The AEC certification expired in 1986.

In 1987, new legislation required AEC to conduct a comprehensive assessment of all existing landfills prior to issuing any new disposal-facility certifications. See 1987, No. 78, § 9. The landfill obtained a Transitional Operational Authorization (TOA) in 1987, allowing it to continue operation under the terms of the previous certification. Following several amendments to the TOA during 1988 and 1989, the landfill ceased accepting waste in September 1989 under the terms of the consent order issued by Washington Superior Court.

In 1990, the landfill obtained an AEC Interim Certification authorizing it to operate until no later than July 1, 1992, in order to generate funds for closure and post-closure expenditures. The Interim Certification required the landfill to monitor the existing alternative water supply and to develop a new water supply meeting Public Community Water Supply standards, to replace the existing alternative water supply. The landfill never reopened, however, because its Act 250 application was denied in November 1991. The Interim Certification expired in 1992, and the landfill never developed the new water supply.

In 1992, the landfill received an advisory opinion from the Environmental Board, which concluded that an Act 250 permit was required to install the replacement water supply and to cap and close the landfill. Nevertheless, the landfill filed no permit application following receipt of this opinion.

In 1993, the case was referred to the Attorney General, who brought a complaint in Washington Superior Court alleging violations of several environmental laws. The complaint requested the court to order the landfill to submit a closure plan to ANR, to submit an Act 250 application to the district commission, and to implement the approved closure plan on schedule. It also requested civil fines. The landfill filed a counterclaim against the State and a third-party action against thirteen entities including ANR for contribution for the cost of closure and post-closure operations.

In 1994, the Legislature amended Act 250 to provide: "No permit or permit amendment is required for closure operations at an unlined landfill which began disposal operations prior to July 1, 1992 and which has been ordered closed under section 6610a . . . ." 1993, No. 208 (Adj. Sess.), § 4 (codified at 10 V.S.A. § 6081(h)). Simultaneously, the Legislature amended 10 V.S.A. § 6610a to allow the Secretary of ANR to take action against a disposal facility that "has failed to

perform closure and post-closure operations as deemed necessary by the secretary to preserve and protect the air, groundwater, surface water, public health and the environment." 1993, No. 208 (Adj. Sess.), § 5 (codified at 10 V.S.A. § 6610a(c)).

In July 1995, the Department of Environmental Conservation (DEC) initiated the action that is the subject of this appeal. It issued a proposed order under § 6610a(c), alleging violations of various environmental laws and requiring closure, post-closure monitoring, and development of an alternative water supply. Defendants moved for a stay of the administrative proceedings on the ground that the superior court had exclusive subject-matter jurisdiction over the enforcement action. The stay was denied by the hearing officer in the administrative tribunal, and defendants' request for disqualification of the hearing officer was also denied. In July 1996, the Secretary issued her final order, from which defendants have taken this appeal.

I.

In their brief, defendants argue that the hearing officer erred by denying their motion for his disqualification. They maintain that the hearing officer, as an employee of ANR, had an impermissible conflict of interest because the outcome of the administrative proceeding could affect ANR's liability in the related superior court case. At oral argument, defendants acknowledged that the Secretary, also employed by ANR, has the same interest in the outcome of the administrative proceeding as the hearing officer. Defendants then argued that the Secretary should also be disqualified, and indeed, that ANR should not be permitted to pursue administrative enforcement while the complaint against ANR was pending in superior court.

Defendants claim that the alleged conflict of interest arising from ANR's role in the two proceedings violates their due process rights under the United States and Vermont Constitutions as well as their rights under 12 V.S.A. § 61(a) and the Vermont Code of Judicial Conduct, Administrative Order No. 10. To the extent that defendants rely on Chapter II, § 28 of the Vermont Constitution (justice shall be impartially administered) and the Code of Judicial Conduct, A.O. 10, we have previously held that neither one applies to proceedings conducted by the executive branch. *In re Crushed Rock, Inc.*, 150 Vt. 613, 623, 557 A.2d 84, 89-90 (1988). Thus, we examine only the claims brought under the federal Due Process Clause and 12 V.S.A. § 61(a).

A fair trial before an impartial decisionmaker is a basic requirement of due process, applicable to administrative agencies as

well as to the courts. *Withrow v. Larkin*, 421 U.S. 35, 46 (1975). There is a presumption of honesty and integrity in those serving as administrative adjudicators. See *id.* at 47; see also *Crushed Rock*, 150 Vt. at 622, 557 A.2d at 89 (applying *Withrow* presumption of honesty and integrity). Defendants have the burden of overcoming the presumption by establishing an interest that requires disqualification. See *Withrow*, 421 U.S. at 47; see also *Wolkenstein v. Reville*, 694 F.2d 35, 42 (2d Cir. 1982), *cert. denied*, 462 U.S. 1105 (1983) (burden of showing disqualifying interest rests on party asserting bias).

Defendants rely on *Tumey v. Ohio*, 273 U.S. 510 (1927), in which the United States Supreme Court concluded that either a personal or an institutional pecuniary interest in the outcome of a proceeding may be sufficient to require disqualification of the adjudicator. In *Tumey*, the defendant was convicted in a "Mayor's Court," under the state's prohibition statute, for unlawfully possessing liquor. The statute provided that one-half of the fines imposed in such courts were retained by the village. These funds were used to hire attorneys and detectives to enforce the prohibition law and to pay for village improvements. The village ordinance establishing the Mayor's Court provided compensation, in addition to a regular salary, to the mayor for hearing these cases. The mayor received no compensation for holding court, however, unless the defendant was convicted.

The *Tumey* Court concluded that the procedure violated due process on two grounds. First, the mayor "had a direct, personal, pecuniary interest in convicting the defendant who came before him for trial" because he was compensated only for convictions. *Id.* at 523. Moreover, the amount the mayor received could not be considered an insignificant interest. *Id.* at 532. Second, the Court held that, as chief executive of the village with responsibility for the financial condition of the village, the mayor also had an impermissible institutional interest or "official motive" in helping the village financially. *Id.* at 533; 535. Accordingly, the Court reversed the conviction.

The institutional-interest rationale in *Tumey* was clarified in *Dugan v. Ohio*, 277 U.S. 61 (1928), which involved another conviction under the state prohibition law for possessing liquor. In *Dugan*, the mayor received a fixed salary that did not depend on whether he convicted or acquitted the defendant. Thus, he had no individual pecuniary interest in the outcome of the trial. Also, the mayor was one of five commissioners who exercised the legislative powers of the city, whereas the city manager exercised all the executive powers. Consequently, the Court concluded that the mayor's institutional pecuniary

interest in the outcome of his trials was too "remote" to violate due process. *Id.* at 65.

More recently, the Court examined a state statute that authorized mayors to adjudicate ordinance and traffic violations. In *Ward v. Village of Monroeville*, 409 U.S. 57 (1972), the fines derived from the Mayor's Court constituted a major part of the village income, in some years up to fifty percent of the budget. In addition, the mayor, who had convicted and fined the defendant, had wide executive powers and was responsible for overall supervision of village affairs. The Court reversed two traffic convictions, concluding that the scheme in *Ward* was similar to that in *Tumey* and "wholly unlike that in *Dugan.*" *Id.* at 60, 62. Thus, the mayor's executive responsibilities for village finances created an impermissible bias in favor of imposing fines in the Mayor's Court.

In this case, defendants acknowledge that neither the Secretary nor the hearing officer has a personal interest in the administrative enforcement proceeding.[1] They urge the Court to hold that ANR's institutional pecuniary interest is sufficient to require its disqualification under *Tumey* and *Ward*. "In both *Tumey* and *Ward* the Court put great emphasis on the fact that the revenues generated by the Mayor's Court were very substantial and vitally important to the village's fiscal well being." *Wolkenstein*, 694 F.2d at 43. In this case, however, defendants allege mere possibilities. They claim the findings in the enforcement proceeding *could* have preclusive effect in superior court or otherwise affect the decision in superior court, that ANR *may* be found liable in superior court but not have insurance adequate to cover its potential liability, and consequently, that ANR has a significant financial stake in the outcome of the enforcement proceeding, creating an impermissible bias on its part.

It is highly improbable that decisions made in the enforcement proceeding would be distorted by some expectation that this sequence of contingencies could affect the financial security of ANR. Cf. *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 252 (1980) ("[I]t is exceedingly improbable that . . . enforcement decisions would be distorted by some expectation that all of these contingencies would . . . come to fruition."). Unlike *Tumey* and *Ward*, there is no statute

---

[1] The parties' reliance on *Gibson v. Berryhill*, 411 U.S. 564 (1973), and *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986), is misplaced. These cases are not applicable because they both involve personal pecuniary interest as the grounds alleged for disqualification.

or regulation that would allow the outcome herein to affect ANR's budget as opposed to the general fund of the state. See 32 V.S.A. § 502 (money received by all administrative departments shall be paid into state treasury unless otherwise provided). Indeed, defendants have failed to make any connection between ANR's potential liability in superior court and ANR's fiscal well-being. A realistic appraisal of the facts herein shows no risk of actual bias by ANR in this case. Cf. *Withrow*, 421 U.S. at 47 ("realistic appraisal of psychological tendencies and human weakness" must indicate "a risk of actual bias" to violate due process).

■ Cases applying the *Tumey/Ward* due process analysis also indicate that defendants here have failed to show any institutional interest requiring disqualification. Compare *Wolkenstein*, 694 F.2d at 42 (superintendent had no disqualifying interest in deciding whether teacher's objections to notice of illegal strike participation were legally sufficient; superintendent is not responsible for raising money to run schools and strike-penalty provisions did not raise significant revenue), with *United Church of Medical Ctr. v. Medical Ctr. Comm'n*, 689 F.2d 693, 699 (7th Cir. 1982) (violation of due process for commission to determine whether reverter provisions in deed revested property in commission because commission had direct pecuniary interest in outcome); *Meyer v. Niles Township*, 477 F. Supp. 357, 362 (N.D. Ill. 1979) (plaintiff denied fair hearing where Public Aid Committee that denied her medical benefits was panel of township supervisors responsible for township funds from which benefits would have been paid). We conclude that *Tumey* and *Ward* are not applicable because defendants have failed to show that ANR has any prospect of institutional gain or loss resulting from the outcome of the enforcement proceeding.

■ ■ Finally, we reject defendants' contention that they may prevent administrative enforcement of environmental laws by filing suit against ANR. "A judge cannot be disqualified merely because a *litigant* sues or threatens to sue him or her." *In re Vermont Sup. Ct. Admin. Directive No. 17*, 154 Vt. 217, 226, 576 A.2d 127, 132 (1990); see also *In re Illuzzi*, 164 Vt. 623, 624, 670 A.2d 1264, 1265 (1995) (requiring disqualification when litigant sues or threatens to sue judge would allow manipulation of courts and judge shopping). The Constitution does not impose stricter due process requirements in administrative proceedings than in the courts. See *Withrow*, 421 U.S. at 49. Thus, defendants' suit against ANR does not disqualify ANR

employees from pursuing enforcement actions. Cf. *Crushed Rock*, 150 Vt. at 622, 557 A.2d at 89 (presumption of honesty and integrity in *Withrow* cannot be lightly overcome, especially if disqualification of environmental board means no administrative proceeding can go forward).

Defendants make the same argument under 12 V.S.A. § 61(a) that they make under the Due Process Clause, and they rely on the same cases to illustrate the concept of institutional pecuniary interest. Because defendants have failed to show that ANR or any of its employees had any institutional pecuniary interest as defined by *Tumey/Ward* and applied in *Wolkenstein*, we need not decide whether to recognize an institutional pecuniary interest as a ground for disqualification under § 61(a).[2]

## II.

Defendants next argue that the superior court has exclusive subject-matter jurisdiction over the enforcement matter, and therefore, this Court should vacate the Secretary's order. To support this assertion, defendants contend that (1) 4 V.S.A. § 113 grants exclusive jurisdiction over civil actions to the superior court, and (2) the common-law principle of priority grants exclusive jurisdiction to the first tribunal to acquire jurisdiction, in this case the superior court. Nonetheless, as defendants acknowledge, both proceedings were brought under 10 V.S.A. § 6610a (waste management enforcement), and thus we begin by examining the statute.

■ "Absent a compelling indication that an agency has misinterpreted the statute it has been charged to execute, we will defer to the agency's judgment." *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 112-13, 666 A.2d 1170, 1172 (1995). We are "reluctant to substitute our judgment for the experience and expertise of an agency." *Id.* at 112, 666 A.2d at 1172. Thus, as we have consistently held, agency actions enjoy a presumption of validity. *Id.* at 113, 666 A.2d at 1172.

The superior court action was filed under § 6610a(a), which provides: "The action the secretary may take includes, but is not limited to: (1) . . . issuing an order directing . . . such steps as are necessary," including "permanent or temporary cessation of opera-

---

[2] Defendants also rely on *R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist.*, 904 P.2d 462, 466 (Ariz. Ct. App. 1995). The Supreme Court of Arizona vacated this decision, ruling that the case could be decided without reaching the constitutional issue. *R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist.*, 936 P.2d 554, 557 (Ariz. 1997).

tion; *and* (2) requesting that the attorney general . . . commence an action for injunctive relief, or for the imposition of penalties and fines . . . ." (Emphasis added.) The administrative enforcement action was brought under § 6610a(c), which parallels the language of subsection (a) but applies only to those waste management facilities that are exempt from having to obtain an Act 250 permit for closure operations.

Both subsections (a) and (c) grant the Secretary authority to take such action as she deems necessary *and* request that the Attorney General take appropriate action. We find no language supporting defendants' contention that the Secretary must choose one avenue of enforcement *or* the other, nor do we find any ambiguity. The plain, ordinary meaning of the statute allows concurrent jurisdiction. See *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335-36, 576 A.2d 450, 452 (1990) (Court will enforce plain meaning of statute because we presume Legislature intended language to carry its plain, ordinary meaning). We find no compelling indication that the agency has misinterpreted the statute.

Defendants argue that by granting the superior court "plenary powers" in § 6610a(a)(2), the Legislature intended to grant the superior court exclusive jurisdiction. Defendants' construction is contrary to the plain meaning of "plenary," which means "complete" and "unqualified," not exclusive. See Black's Law Dictionary 1038 (5th ed. 1979). We also reject defendants' argument that 4 V.S.A. § 113 grants exclusive jurisdiction over this matter to the superior court. Section 113 gives the superior court "original and exclusive jurisdiction of all original civil actions," except those actions specifically designated to the district, family, environmental and supreme courts. This is an administrative action, however, not a "civil action" as that term is commonly understood. See Black's Law Dictionary 222 (5th ed. 1979) (civil action includes all actions in equity and at law); *id.* at 42 (administrative hearing contrasted with civil and criminal trials). Carrying defendants' argument to its logical extreme would mean that § 113 grants the superior court exclusive jurisdiction over all Vermont administrative actions, a notion that would be absurd. As part of Title 4 pertaining to the judiciary, § 113 addresses only the jurisdiction of the respective courts; it does not address jurisdiction of the administrative agencies.

We also conclude that the principle of priority does not apply in this case. "In general, as between two tribunals with concurrent

subject matter jurisdiction, the one which first acquires such juris-diction should exercise it, and the second in point of time should defer to the first." *City of South Burlington v. Vermont Elec. Power Co.*, 133 Vt. 438, 443, 344 A.2d 19, 22 (1975). There is an exception to this rule, however, where the second tribunal may offer relief not available in the first. *In re Pfenning*, 136 Vt. 92, 94, 385 A.2d 1070, 1072 (1978). The exception to the general rule applies here because the two forums do not provide the same relief. As a result of Act 208 in 1994, certain landfills are subject to closure by order of the Secretary without requiring an Act 250 permit. See 10 V.S.A. § 6081(h). The Act 250 exemption applies to the landfill here, and the Secretary has ordered closure without an Act 250 permit. This relief the superior court cannot provide.

## III.

Intervenor cross-appeals, claiming the Secretary erred by ruling that stipulated penalties are not available under § 6610a(c)(1). The proposed order, issued by DEC in July 1995, provided that defend-ants "shall pay a stipulated penalty in the amount of $1000 per day after September 30, 1995 that the Facility remains unclosed." Similar provisions provided stipulated penalties for failure to perform water quality monitoring. The final order of the Secretary holds, however, that § 6610a(c)(1) provides only for injunctive relief and does not authorize her to assess administrative penalties. The Secretary maintains that she must refer the matter to the Attorney General under subsection (b) to pursue civil fines or penalties; thus, the provisions for stipulated penalties are absent from her final order.

Intervenor argues that the language of subsection (c) — "the secretary may take such action as the secretary determines to be necessary . . . to preserve and protect the air, groundwater, surface water, public health and the environment" — authorizes the Secre-tary to impose stipulated penalties. To support this interpretation, intervenor maintains that (1) the landfill has a long history of noncompliance with environmental laws, permits and orders; (2) stipulated penalties may be avoided by timely compliance, and consequently, are appropriate where noncompliance has been a problem in the past; (3) stipulated penalties further the purpose of the statute to protect the health of the people and the environment; and (4) the landfill has no incentive to comply in a timely manner without the sanctions for future noncompliance.

Although intervenor has a strong argument, our primary task in construing a statute is to give effect to the intent of the Legislature. *State v. Ben-Mont Corp.*, 163 Vt. 53, 57, 652 A.2d 1004, 1007 (1994). To determine legislative intent, we review the history and the entire framework of the statute. *Id.* Absent a compelling indication that the agency has misinterpreted a statute it has been charged to execute, we will defer to the agency's judgment. *Lemieux*, 164 Vt. at 112-13, 666 A.2d at 1172.

Vermont's Waste Management Act, 10 V.S.A. §§ 6601-6632, was enacted to comply with the federal Resource Conservation and Recovery Act of 1976 (RCRA), 42 U.S.C. §§ 6901-6991. *Ben-Mont*, 163 Vt. at 58, 652 A.2d at 1007. Like RCRA, Vermont initially authorized only criminal penalties, see *id.*, and the penalty provisions could be implemented by requesting the Attorney General or state's attorney to bring a court action. In 1980, amendments to RCRA authorized the courts to impose civil penalties, see 42 U.S.C. § 6928(g), and following the federal lead, the Vermont Legislature in 1984 authorized our courts to impose civil penalties by amending the penalty provision of the Waste Management Act, § 6612. See 1983, No. 148 (Adj. Sess.), § 8. At the same time, § 6610a was amended to authorize the Attorney General or appropriate state's attorney to bring an action for "penalties and fines as provided in section 6612." *Id.* §§ 7, 8.

In 1984, amendments to RCRA authorized the Administrator of the Environmental Protection Agency to impose civil penalties. See 98 Stat. 3272 (1984), codified at 42 U.S.C. § 6928(a)(1). The Vermont Legislature, however, has never authorized the Secretary of ANR to impose such penalties. Unlike RCRA, the Waste Management Act provides for civil penalties only in actions brought by the Attorney General or the appropriate state's attorney. Thus, the Secretary may order injunctive-type relief only, not civil penalties under § 6612. Cf. 10 V.S.A. § 8010 (providing explicitly for administrative penalties in administrative orders issued under §§ 8008 or 8009(a), (c)).

IV.

Next, intervenor argues that the Secretary's order fails to indicate that any consideration was given to intervenor's proposed findings of fact, and therefore, was in violation of 3 V.S.A. § 812. Section 812(a) provides that, in contested cases, "the decision shall include a ruling upon each proposed finding." The Secretary is not

required to rule individually on each request, but her opinion must at least show that she considered and ruled upon each proposed finding. See *In re Village of Hardwick Elec. Dep't*, 143 Vt. 437, 445, 466 A.2d 1180, 1184 (1983). The purpose of this requirement "is to make a clear statement to the litigants, and to this Court if an appeal is taken, of what was decided and how the decision was reached." *Louis Anthony Corp. v. Department of Liquor Control*, 139 Vt. 570, 573, 432 A.2d 1186, 1188 (1981). All parties agree that the order omits any reference to any proposed findings other than those submitted by defendants, and therefore, does not comply with § 812.

Moreover, we are unable to address many of intervenor's remaining arguments because the Secretary has not ruled on these proposed findings. Cf. *Roy v. Mugford*, 161 Vt. 501, 507, 642 A.2d 688, 692 (1994) (when requested, court must make findings essential to disposition of issues properly before it). For example, intervenor argues that the water supply provisions of the 1996 order (1) do not meet the requirements of 1993, No. 208 (Adj. Sess.), § 8, and (2) are not supported by the record. Section 8 of Act 208 states: "Conditions included in existing or expired land use permits shall not be pre-empted by any closure order and shall be duplicated in any order issued under 10 V.S.A. § 6610a(c), *unless the secretary determines that different conditions are necessary to provide equal or greater protections*." (Emphasis added.) Although the Secretary acknowledged Act 208, § 8, she made no findings to address it and failed to rule on whether the conditions of the 1996 order satisfy its requirements. Similarly, without rulings on the proposed findings, we are unable to determine what the Secretary decided about intervenor's objections to multiple replacement wells in lieu of a single community system. Intervenor proposed that no evidence supported a multiple-well system, while four witnesses testified in favor of a public community system.

 We will remand if we are left in a position where we must speculate as to the basis of the decision reached, *Rossetti v. Chittenden County Transp. Auth.*, 165 Vt. 61, 68, 674 A.2d 1284, 1289 (1996), or if a claim has been left unaddressed. See *Lewis v. Cohen*, 157 Vt. 564, 572, 603 A.2d 352, 356 (1991) (where trial court failed to rule on claim, proper remedy is to remand). Accordingly, we do not decide whether the Secretary's order complies with Act 208, § 8, nor do we decide whether the record supports the conditions allowing (1) a financial responsibility instrument, or (2) multiple replacement water systems as alternatives to a single water system that meets

Public Community Water Supply standards. Because the decision on the replacement water system leaves doubts as to what was decided and how it was decided, we must remand for the Secretary to issue a decision in compliance with § 812.

## V.

Intervenor also contends that the Secretary improperly dismissed the individual defendants, Frank L. Barker, Jr. and Robert MacNeil. The Secretary held that the individual defendants could not be subject to her order because "no evidence was presented regarding the liability of either Frank L. Barker, Jr., or Robert MacNeil as responsible corporate officers of the respective corporations." Intervenor contends that the Secretary erred because (1) the individual defendants' liability was not a contested issue and intervenor had no burden to produce such evidence, and (2) even if it had such a burden, the record contains evidence of liability.

Vermont has recognized that a corporate officer may be held liable for a tort in which the officer personally participated even though the corporation may also be held liable. *New England Acceptance Corp. v. Nichols*, 110 Vt. 478, 488, 8 A.2d 665, 670 (1939); see *Stuart v. Federal Energy Sys.*, 596 F. Supp. 458, 461 (D. Vt. 1984) (under Vermont law corporate officer may be "held liable for a tort in which he personally participated" although corporation may also be liable); cf. *United States v. Conservation Chem. Co. of Illinois*, 733 F. Supp. 1215, 1221 (N.D. Ind. 1989) (corporate officer may be held liable under RCRA "as long as he was actively involved in the alleged violative activity").

Under a preliminary order, the hearing officer ruled that defendants had waived their opportunity to raise issues with the proposed order through prefiled testimony. The hearing officer also held that the "issues at the hearing will be limited to those issues that were identified by [the] parties in response to [an earlier order] and were also addressed in prefiled direct testimony." Intervenor maintains that the issue of the liability of the individual defendants was not addressed in prefiled testimony and thus, under the order, was not a contested issue at the hearing. We disagree. Although defendants failed to prefile direct testimony on this issue, they had no obligation to do so because the burden of proof lay on DEC. The hearing officer so stated at the beginning of the hearing. We reject intervenor's contention that defendants' failure to prefile direct testimony could shift the burden to defendants.

■ We agree with intervenor, however, that the Secretary erred in concluding that no evidence was presented regarding the liability of the individual defendants. Evidence of Barker's liability included a district court record of his criminal conviction for failure to cover a landfill, wherein it was stated that Barker's occupation is landfill operator, and an affidavit from an employee of AEC stating that Barker violated AEC regulations "[d]espite repeated promises by Frank Barker to perform covering on a daily basis." The record also includes an assurance of discontinuance issued by AEC, finding that "Frank Barker operates a solid waste disposal facility located off of Route 113 in the Town of Thetford." The assurance also states that "[t]he privileges extended by this Assurance are personal to Frank Barker and are not transferable." Accordingly, we conclude that the finding that no evidence supports Barker's individual liability is clearly erroneous.[3] See *Bigelow v. Department of Taxes*, 163 Vt. 33, 35, 652 A.2d 985, 986 (1994) ("we will not set aside an administrative agency's findings unless clearly erroneous"). We agree, however, that DEC failed to produce any evidence of MacNeil's liability, and therefore he was properly dismissed. On remand, the Secretary shall consider whether the evidence was sufficient to establish Barker's liability.

*We affirm (1) the order denying the motion for disqualification of the hearing officer, (2) the holding that ANR has concurrent jurisdiction to pursue enforcement proceedings, (3) the ruling that contingent sanctions are not available under 10 V.S.A. § 6610a(c)(1), and (4) the dismissal of Robert MacNeil; remainder of order vacated and cause remanded for rulings on all proposed findings and entry of a new order consistent with the amended findings.*

---

[3] Also clearly erroneous is the finding that defendants' allegations about who owned and operated the landfill during the years 1973-1996 have not been disputed. Defendants alleged that Barker Sargent Corporation has been the operator continuously since 1973, yet the Secretary's findings indicate that all permits and certifications were issued to Upper Valley Regional Landfill after its incorporation in 1988.