2006 VT 35

In re ODESSA CORPORATION

[898 A.2d 1256]

No. 04-075

¶ 1. April 25, 2006. Odessa Corporation, doing business as Champlain Farms, appeals from the Liquor Control Board's order suspending its license for seventeen days after finding that one of Odessa's employees sold alcohol to a minor. Odessa raises numerous claims of error. We affirm.

¶ 2. Odessa operates a convenience store in Winooski, Vermont. In August 2003, it was notified that a hearing would be held on whether its license should be suspended or revoked based on an allegation that one of its employees sold alcohol to a minor. Approximately three weeks before the hearing, Odessa's attorney, William Simendinger, contacted William Goggins, the director of the Enforcement Division of the Department of Liquor Control, seeking to resolve the pending charge without a hearing. Goggins directed Simendinger, as he had in previous cases, to submit a written offer of settlement, which he would present to the Board. Two days before the scheduled hearing, Goggins received a letter from Simendinger indicating that Odessa would agree to pay $500 to resolve the charge. Goggins telephoned the Board members and informed them of Odessa's offer. He read the charge from the notice of hearing and summarized Odessa's history of prior violations. All three Board members rejected the proposal, indicating that they would settle the case if Odessa agreed to a fourteen-day or fifteen-day suspension of its license.

¶ 3. A contested case hearing ensued. On the day of the hearing, Odessa requested a continuance because one of its witnesses, the store clerk, failed to appear. The State opposed Odessa's request, noting that Odessa had failed to subpoena the clerk, and the State had several other witnesses who had traveled to Montpelier and were prepared to testify. The Board denied Odessa's request, explaining that Odessa was responsible for securing its witnesses and the State was prepared and ready to proceed.

¶ 4. Odessa then moved to recuse the Board members and dismiss the case, asserting that the communications be-

tween Goggins and the Board regarding Odessa's settlement offer violated due process and the Vermont Administrative Procedure Act. The Board heard evidence and argument on the motion. Goggins described the settlement process, noting that he had explained the process to Simendinger in advance without objection. Goggins testified that he did not discuss the investigation, witnesses, evidence, or the strength or weakness of the State's case with the Board members.

¶ 5. The State offered the settlement letter into evidence, and the Board admitted it over Odessa's objection. The Board explained that the letter provided the factual basis for Odessa's claim that the Board should be recused, and it demonstrated what the communication had been between Goggins and the Board with respect to Odessa's offer. Simendinger cross-examined Goggins about his conversations with the Board, inquiring if Goggins could remember the conversations verbatim. Goggins responded that he always followed the same procedure in discussing a settlement with the Board, but he acknowledged that he could not recall his conversations verbatim. Simendinger then sought to call the Board members as witnesses, asserting that Goggins had not adequately testified to the substance of his conversations with the Board. The State objected, arguing that it would be "extraordinary and inappropriate" for the Board members to become witnesses at a proceeding they were conducting. The State noted that Goggins had testified to the conversations and had been subject to cross-examination. It also explained that Odessa's motion was based on an allegation that the Board had received "prejudicial evidence" from Goggins, and no evidence supported such an allegation, nor was there any evidence that the conversations involved disputed issues of fact as Odessa alleged. The

Board denied Odessa's request that the Board members testify, as well as Odessa's recusal motion.

¶ 6. The Board then held an evidentiary hearing on the alleged violation. The arresting officer testified that on the evening in question, he observed a young woman exiting Odessa's store carrying a large quantity of beer. She looked obviously underage, and the officer spoke with her and asked her for identification. She produced a driver's license but eventually admitted to the officer that the identification was false and she was underage. The minor identified the clerk who had sold her the alcohol. The officer spoke to the clerk who informed him that she had sold alcohol to the minor "dozens of times," and she had not asked the minor for identification before completing the sale. The officer verified this latter statement by looking at an "audit trail," a mechanism used by Odessa to track sales. The minor also testified at the hearing. She stated that she had purchased a large amount of beer that evening at Odessa's store. She stated that she frequently bought beer there. She admitted showing the officer false identification, and she acknowledged that she was underage at the time of the sale. Counsel for the Board later asked if the minor's false identification card would be made an exhibit, and the attorney for the State replied that it would obtain and submit the identification card. Odessa's counsel objected, asserting that he would want to cross-examine the arresting officer, who had been excused, about the identification card. The Board overruled the objection, but the identification card was not entered into evidence. In January 2004, the Board issued its order suspending Odessa's license for seventeen days based on its finding that one of Odessa's clerks had sold "a considerable quantity of beer" to an underage individual. Odessa appealed.

¶ 7. On appeal, we presume the reasonableness and validity of a determination made within an administrative agency's expertise, and we require a clear and convincing showing to overcome the presumption. *In re Capital Inv., Inc.*, 150 Vt. 478, 480, 554 A.2d 662, 664 (1988). We will uphold the Board's factual findings unless they are clearly erroneous, and we will not overturn the Board's decision if there is any reasonable basis to support its actions. *Id.* at 480-81, 554 A.2d at 664.

¶ 8. Odessa first challenges the Board's settlement procedure. It argues that the process unfairly allows settlements to be negotiated between the prosecutor and the same individuals charged with conducting an evidentiary hearing on the allegation. According to Odessa, the Board could not impartially consider the merits of the allegation after considering and rejecting Odessa's settlement offer, and the sanction imposed by the Board must be seen as a punishment for Odessa's refusal to accept the Board's settlement offer. Odessa also argues that the hearing was unfair because the Board improperly engaged in ex parte communications about the settlement offer and failed to put its conversations with Goggins on the record, in violation of the Vermont Administrative Procedure Act (VAPA), 3 V.S.A. §§ 800-849. Finally, Odessa asserts that the Board committed reversible error by admitting the settlement offer into evidence.

¶ 9. While we agree that the Board's settlement procedure is highly flawed, we find no prejudicial error in this case and discern no basis for disturbing the Board's decision. We begin with our concerns regarding the settlement procedure. The VAPA allows for the informal disposition of any contested case by stipulation, agreed settlement, consent order, or default, unless precluded by law. 3 V.S.A. § 809(d). We accord agency adjudicators a "presumption of honesty

and integrity," *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), and recognize that some intermixing of roles within administrative bodies is plainly permitted. See, e.g., *id.* at 52 (rejecting argument that combination of investigative and adjudicative functions within agency necessarily creates an unconstitutional risk of bias in administrative adjudication); *In re Desautels Real Estate, Inc.*, 142 Vt. 326, 333-34, 457 A.2d 1361, 1364-65 (1982) (rejecting argument that board cannot be "investigators, prosecutors and judges"). There is no per se violation of due process where, as here, the Board rejects a settlement offer, conducts a contested case hearing, and decides the matter on the merits. See *Larkin*, 421 U.S. at 56 n.24 ("'The [federal Administrative Procedure] Act does not and probably should not forbid the combination with judging of instituting proceedings, negotiating settlements, or testifying.'" (quoting 2 K. Davis, Admin. Law Treatise § 13.11, at 249 (1958))). Nonetheless, we are extremely troubled by the Board's ill-considered settlement procedure — one that calls for informal off-the-record communication between the Department's director of enforcement and the Board members themselves. This unwritten settlement procedure appears fraught with potential difficulties; at the very least, it appears prone to generate litigation on collateral issues like this one. The Board should set forth its settlement procedure in a written rule that is made generally available to the public. The Board may choose, for example, to require that settlement offers be conveyed to it in writing through its lawyer. But certainly, the procedure should not be one that allows settlement offers to be conveyed to the Board over the telephone by the director of enforcement.

¶ 10. Notwithstanding our strong concerns about the settlement procedure generally, no prejudicial error resulted from the Board's consideration of

Odessa's settlement offer on the facts presented in this particular case. We reject Odessa's assertion that it was denied a fair hearing before an impartial decision-maker. See *Sec'y, Agency of Natural Res. v. Upper Valley Reg'l Landfill Corp.*, 167 Vt. 228, 234-35, 705 A.2d 1001, 1005 (1997) ("A fair trial before an impartial decisionmaker is a basic requirement of due process, applicable to administrative agencies as well as to the courts."). In its motion to recuse the members of the Board and dismiss the case, Odessa alleged that the Board members had improperly prejudged the case and were biased against it because they engaged in improper ex parte communications with Goggins about the settlement offer. Odessa failed to substantiate these allegations below, and it fails to demonstrate on appeal that the Board's consideration of its settlement offer "create[d] an unacceptable risk of bias to overcome the presumption of honesty and integrity." *In re Crushed Rock, Inc.*, 150 Vt. 613, 619, 557 A.2d 84, 87 (1988).

¶ 11. Odessa maintains that because the Board engaged in improper ex parte conversations about its settlement offer, it was thereby denied an opportunity to defend itself against any off-the-record prejudicial evidence. We reject this argument. While the VAPA prohibits individuals who conduct contested case proceedings from communicating with respect to any issue of fact or law "except upon notice and opportunity for all parties to participate," 3 V.S.A. § 813, there is no evidence that any contested issue of fact or law was discussed in this case. The Board's findings to this effect are supported by the record. Goggins testified to the process he followed in communicating Odessa's offer to the Board. He detailed the information that he provided the Board members, and he stated that he did not discuss the merits of the case with the Board. Given Goggins' testimony, and the fact that he was sub-

ject to cross-examination, the Board did not err in refusing to testify to the substance of the same conversations at a proceeding that it was conducting. Cf. V.R.E. 605 ("A judge sitting at the trial may not testify in that trial as a witness."); see also 3 V.S.A. § 810(1) (providing that "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded" in contested case proceedings). This is particularly true because Odessa's motion to dismiss was based on an allegation that Goggins had disclosed prejudicial information to the Board.

¶ 12. We reject Odessa's assertion that the Board's refusal to testify violated 3 V.S.A. § 809(e) because "[u]ndoubtedly, prejudicial evidence was presented to the Board" that should have been on the record. Section 809(e) requires that the record in a contested case include, among other things, "all evidence received or considered." Putting aside Odessa's failure to identify the allegedly "prejudicial evidence" considered by the Board, we are not persuaded that the settlement discussions in this case constituted "evidence" received and considered by the Board in rendering its decision on the merits of the allegation. In any event, the record did include Goggins' testimony regarding the settlement process, and the Board made numerous findings of fact about what had transpired. These findings are supported by the evidence. Finally, we note that Odessa initiated the settlement process, it was plainly informed of what would occur when it submitted its written offer, and it chose to proceed with the process. Any error in the Board's consideration of Odessa's offer was invited. See *In re Fiorillo Bros. of N.J., Inc.*, 577 A.2d 1316, 1322 (N.J. Super. Ct. App. Div. 1990) (addressing similar issue, and explaining that appellants' attorney plainly understood that settlement offers would be conveyed to administrative board because case could not be settled without board approval,

and thus "it is difficult to imagine why any settlement offer would be made unless the offer would reach the Board").

¶ 13. The Board's awareness of the allegation against Odessa and Odessa's licensing history does not demonstrate that the Board was incapable of rendering an impartial decision. As the United States Supreme Court explained in discussing an analogous issue:

> The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness of the Board members at a later adversary hearing. Without a showing to the contrary, state administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.

*Larkin*, 421 U.S. at 55 (quotations omitted); see also 2 K. Davis & R. Pierce, Admin. Law Treatise § 9.8, at 78 (3d ed. 1994) (stating that an adjudicative decisionmaker is not disqualified simply because of prior exposure to adjudicative facts). Odessa provides no basis for its allegation that the Board was prejudiced by its consideration of the settlement offer, nor has it shown that, by considering the offer, the Board was "disabled from hearing and deciding on the basis of the evidence to be presented at the contested hearing." *Larkin*, 421 U.S. at 55. The evidence presented at the contested case hearing overwhelmingly established that the alleged violation occurred. The fact that the Board imposed a greater sanction than that proposed during the settlement process does not demonstrate bias. When considering the settlement offer, the Board was aware only of Odessa's licensing history and the general allegation as stated in the notice of hearing. At the hearing, the State presented specific evidence as to the nature of the violation — evidence, for example, that Odessa's employee sold a large quantity of beer to an individual who looked "obviously underage," that the clerk did not ask the minor for identification, and that the clerk had sold the same individual alcohol on dozens of occasions. The Board made numerous findings of fact, which are supported by the record, and the Board acted reasonably in concluding that the violation warranted a seventeen-day suspension.

¶ 14. We turn to Odessa's remaining claims, all of which lack merit. First, there is no support for Odessa's assertion that the Board committed reversible error in admitting the settlement offer into evidence. The settlement offer was not introduced to prove the allegation against Odessa. Cf. V.R.E. 408 (providing that offers to compromise claim are "not admissible to prove liability for . . . the claim," and that settlement offers need not be excluded "if the evidence is offered for another purpose, such as proving bias or prejudice of a witness" or negating "a contention of undue delay"). Instead, the State offered the settlement letter in response to Odessa's motion to recuse the members of the Board. More specifically, the State offered the letter to demonstrate the circumstances that led to Goggins' conversation with the Board members and to "confirm and corroborate" Goggins' testimony. The evidence was clearly relevant, and the Board did not err in admitting it. See *Quirion v. Forcier*, 161 Vt. 15, 21, 632 A.2d 365, 369 (1993) (recognizing that trial court has broad discretion in ruling on admissibility of evidence, and party claiming abuse of that discretion bears a heavy burden).

¶ 15. We similarly reject Odessa's assertion that the Board erred in denying its motion for a continuance. Odessa argues that it was not obligated to subpoena its own witness, and that by denying its request for a continuance, the

Board essentially deprived it of its ability to present its case. Odessa suggests that the witness may have been absent due to her pregnancy, and thus unavailable under Vermont Rule of Evidence 804(a)(4) and Vermont Rule of Civil Procedure 40(d)(3). Odessa also asserts that it had made reasonable efforts to secure the witness, and she was therefore "unavailable" under Vermont Rule of Evidence 804(a)(5).

¶ 16. These arguments are unavailing. The record shows that Odessa informed the Board that the witness apparently forgot about the hearing. Odessa acknowledged that it could have subpoenaed the witness to secure her attendance but it failed to do so. See 3 V.S.A. § 809(h) (providing that a licensed attorney representing a party before a board may compel by subpoena the attendance and testimony of witnesses). We fail to see the relevance of the rules of evidence cited by Odessa, which identify exceptions to the hearsay rule for "unavailable" witnesses. See, e.g., V.R.E. 804(a)(4) (providing that hearsay testimony is admissible where the declarant "[i]s unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity"); V.R.E. 804(a)(5) (providing that hearsay testimony is admissible when the proponent of the statement has been unable to procure the witness's attendance by process or other reasonable means). Counsel did not seek to offer any hearsay testimony from this witness, other than a purported "business record," which, as discussed below, was properly excluded.* In any event, counsel's suggestion that its witness may

have been absent due to her pregnancy conflicts with its representation to the Board at the hearing.

¶ 17. We are equally unpersuaded by Odessa's reliance on Vermont Rule of Civil Procedure 40(d)(3), which concerns continuances in civil cases when a witness is sick or otherwise disabled from attending court. As the State points out, even if Rule 40(d) were applicable, it specifically requires an affidavit from a reputable physician to support such a claim. V.R.C.P. 40(d)(1). No such affidavit was offered here. The Board acted within its wide discretion in denying the motion based on its finding that Odessa was responsible for securing the attendance of its own witnesses, and that the delay would be unfair to the State. See *State v. Ahearn*, 137 Vt. 253, 267, 403 A.2d 696, 705 (1979) (stating that a motion for continuance is addressed to the "sound discretion" of trial court, and this Court will not interfere with trial court's decision if there is a reasonable basis for court's discretionary action).

¶ 18. Odessa next challenges several of the Board's evidentiary rulings and related findings. It argues that the Board should have admitted the store clerk's written statement about the disputed sale as a business record under Vermont Rule of Evidence 803(6). It also asserts that the Board gave undue weight to the testimony of the police officer. Finally, it argues that the Board should have obtained and considered evidence that it had objected to both during and after the hearing. We find these arguments without merit.

¶ 19. First, the Board did not abuse its discretion in excluding a written statement that the store clerk prepared after the incident. At the hearing, the State objected to the introduction of this document on hearsay grounds. Odessa maintained that the document was admissible as a business record under Rule 803(6). The Board excluded the state-

_____

* The availability of the witness is immaterial for purposes of determining the admissibility of the business record under Vermont Rule of Evidence 803(6).

ment as inherently unreliable hearsay, and it did not err in doing so. Rule 803(6) provides that a record will not be excluded as hearsay "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the ... record, ... unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." Putting aside whether this document could be considered the product of a "regularly conducted business activity," the Board found the statement untrustworthy, and we defer to its finding. See also *Palmer v. Hoffman*, 318 U.S. 109, 113 (1943) (interpreting similar hearsay exception, and stating that the "fact that a company makes a business out of recording its employees' versions of their accidents does not put those statements in the class of records made 'in the regular course' of the business" under hearsay exception). While the rules of evidence for contested cases are relaxed under certain circumstances, this is not a case where the evidence was "of a type commonly relied upon by reasonably prudent [people] in the conduct of their affairs" and "necessary to ascertain facts not reasonably susceptible of proof" under the rules of evidence. 3 V.S.A. § 810(1) (setting forth rules of evidence for contested cases). Odessa could have secured the presence of its witness to testify to the evening's events, but it failed to do so.

¶ 20. We also reject Odessa's argument that the Board somehow erred by crediting the testimony of the arresting officer that the minor did not look like the photograph on her identification card. Despite Odessa's argument to the contrary, this issue is irrelevant to the Board's ultimate conclusion because the clerk in this case did not ask the minor for her identification before making the sale. Finally, we reject Odessa's assertion that it was prejudiced because evidence that it sought to exclude at the hearing — the minor's false identification card — was never entered into evidence. The record shows that at the close of the State's case the Board's counsel asked if the minor's false identification could be made an exhibit; the attorney for the State indicated that he would obtain the driver's license and submit it to the Board. Odessa's counsel objected and renewed its objection in its post-trial memorandum. The Board overruled the objection, but the license was not admitted into evidence. Odessa now argues that the Board was wrong to authorize the submission of evidence after the close of the hearing, and it was prejudiced when the evidence was not submitted. This argument is illogical, and no prejudice is demonstrated. The minor did not use her false identification to purchase the alcohol. Moreover, as Odessa sought to exclude this evidence at the hearing, we simply cannot credit its assertion that it was somehow prejudiced when the evidence was not submitted to the Board. The Board's findings in this case are amply supported by the record, and they support the Board's conclusion that one of Odessa's employees sold alcohol to a minor.

*Affirmed*