******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HIGH WATCH RECOVERY CENTER, INC.
*v.* DEPARTMENT OF PUBLIC
HEALTH ET AL.
(SC 21107)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander and Dannehy, Js.

*Syllabus*

The plaintiff, a substance abuse treatment facility, appealed from the judg-
ment of the trial court, which had dismissed the plaintiff's administrative
appeal from the decision of the named defendant, the Department of Public
Health. The department previously had approved the application of the
defendant B Co. for a certificate of need, pursuant to statute ((Rev. to 2017)
§ 19a-639 (a)), to establish a competing substance abuse facility in the same
town in which the plaintiff is located. Prior to the public hearing on B Co.'s
application, the plaintiff was granted intervenor status. Thereafter, B Co.
and the department entered into a settlement agreement pursuant to which
B Co.'s application was approved subject to certain conditions. In dismissing
the plaintiff's administrative appeal for lack of subject matter jurisdiction,
the trial court concluded that the plaintiff lacked standing to appeal because
it was not aggrieved by the department's decision. On the granting of certifi-
cation, the plaintiff appealed from the trial court's judgment of dismissal.
*Held*:

The trial court correctly concluded that it lacked subject matter jurisdiction
over the plaintiff's appeal, as the plaintiff was not statutorily or classically
aggrieved by the department's decision to approve B Co.'s application for
a certificate of need.

Generally, an allegation that governmental action will result in competition
that is detrimental to a complainant's business is insufficient to qualify the
complainant as aggrieved for purposes of standing in the administrative
context, and there was no indication that the language in § 19a-639 (a)
created an exception to this general rule.

Specifically, although § 19a-639 requires consideration of a proposed health
care facility's impact on other state health care facilities, it does so in the
interest of ensuring that the public's general need for health care is met
and does not contain language manifesting a legislative intent to protect
market competitors from any financial impact that may result from the
issuance of a certificate of need, and, accordingly, the plaintiff was no more
aggrieved than any other member of the public by the department's approval
of B Co.'s application.

Moreover, the plaintiff's status as an intervenor in the proceedings before
the department, coupled with the settlement negotiations and ultimate agree-
ment between B Co. and the department that led to the approval of the

certificate of need, did not support the plaintiff's claim that it was classically aggrieved by the department's decision to grant the application for a certificate of need, as the plaintiff failed to articulate a specific, personal and legal interest in the department's decision.

Argued May 12—officially released August 5, 2025

*Procedural History*

Appeal by the plaintiff from the decision of the named defendant approving the application of the defendant Birch Hill Recovery Center, LLC, for a certificate of need to establish a substance abuse treatment facility, brought to the Superior Court in the judicial district of Litchfield and transferred to the judicial district of New Britain, where the court, *Hon. Henry S. Cohn*, judge trial referee, granted the defendants' motions to dismiss and, exercising the powers of the Superior Court, rendered judgment dismissing the appeal, from which the plaintiff appealed to the Appellate Court, *Bright, C. J.*, and *Moll* and *Harper, Js.*, which affirmed the trial court's judgment; thereafter, the plaintiff, on the granting of certification, appealed to this court, which reversed the Appellate Court's judgment and remanded the case to that court with direction to remand the case to the trial court for further proceedings; subsequently, the court, *Budzik, J.*, granted the defendants' motions to dismiss and rendered judgment dismissing the appeal, from which the plaintiff appealed. *Affirmed.*

*Peter J. Zarella*, with whom were *Snigdha Mamillapalli* and, on the brief, *Karen Dowd*, for the appellant (plaintiff).

*Melanie A. Dillon*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellees (named defendant et al.).

*Jeffrey J. Mirman*, with whom was *Alexa T. Millinger*, for the appellee (defendant Birch Hill Recovery Center, LLC).

*Opinion*

D'AURIA, J. The sole issue in this appeal is whether the plaintiff, High Watch Recovery Center, Inc., is aggrieved by, and therefore has standing to contest, on appeal to the Superior Court, the administrative decision of the defendant, the Department of Public Health (department), approving, pursuant to General Statutes (Rev. to 2017) § 19a-639 (a),[1] the certificate of need application of the plaintiff's competitor, the defendant, Birch Hill Recovery Center, LLC (Birch Hill). After two public hearings, in which the plaintiff participated as an intervenor, the department entered into a settlement agreement with Birch Hill pursuant to which the department approved the certificate of need application. The plaintiff claims that the court incorrectly determined that it was not aggrieved by the department's decision to approve Birch Hill's certificate of need application. We disagree and affirm the judgment of the Superior Court.

The record reveals the following procedural history, much of which is set forth in our related decision in *High Watch Recovery Center, Inc.* v. *Dept. of Public Health,* 347 Conn. 317, 320, 297 A.3d 531 (2023). The plaintiff is a nonprofit substance abuse treatment facility in Kent. Id., 321. In September, 2017, Birch Hill, seeking to establish a competing substance abuse treatment facility in Kent, submitted a certificate of need application to the Office of Health Care Access, which, at the time, was a unit within the department that administered the certificate of need application program for health care facilities.[2] Id. The department designated a

[1] All references in this opinion to § 19a-639 are to the 2017 revision of that statute.

[2] The Office of Health Care Access is now known as the Office of Health Strategy, which also is named as a defendant in the plaintiff's administrative appeal. In 2017, the General Assembly created the Office of Health Strategy to operate as a unit within the department. See Public Acts, Spec. Sess., June, 2017, No. 17-2, § 164 (codified at General Statutes § 19a-754a). On July 1, 2018, the Office of Health Strategy consolidated the Office of Health Care

hearing officer to oversee Birch Hill's application and to "rule on all motions and recommend findings of fact and conclusions of law upon completion of the hearing." Several months later, the hearing officer notified Birch Hill that she would conduct a public hearing at which any person or entity that successfully obtained party, intervenor, or informal participant status, could participate in the manner designated by the hearing officer. *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, supra, 347 Conn. 321–22. Prior to the public hearing, which began in March, 2018, the plaintiff petitioned for intervenor status with the ability to " 'present oral and written testimony and evidence . . . [and] the right to cross-examine the [a]pplicant and any of its witnesses, experts or other persons submitting oral or written testimony . . . .' " Id., 323. The hearing officer granted the plaintiff's petition for intervenor status; id.; and thereafter continued the public hearing for "the limited purpose of questioning Birch Hill's absent, proposed medical director . . . ." The department later designated another hearing officer to oversee the hearing, which resumed in May, 2018. In November, 2018, the hearing officer recommended that the Commissioner of Public Health deny Birch Hill's application. *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, supra, 324. In response, Birch Hill filed a brief in opposition to the proposed final decision and requested oral argument. Id. In March, 2019, the defendants entered into a settlement agreement, in which the department approved Birch Hill's certificate of need application subject to particular conditions.[3] Id.,

Access within a larger unit in its office, the Health Systems Planning Unit, both of which operated under the department's purview. Thereafter, the Health Systems Planning Unit administered the certificate of need application process for health care facilities that is at issue in this appeal. See General Statutes § 19a-612d. In the interest of clarity, we refer in this opinion to the Office of Health Care Access and the Health Systems Planning Unit as the department.

[3] In relevant part, these conditions mandated that five of the beds at Birch Hill's substance abuse treatment facility be reserved for "uninsured patients

Pursuant to General Statutes § 19a-641[4] and the Uniform Administrative Procedure Act; see General Statutes § 4-183;[5] the plaintiff appealed to the Superior Court, challenging the department's approval of Birch Hill's certificate of need application. Given that the hearing officer had recommended denying Birch Hill's application in November, 2018, the plaintiff claimed that "the department had abused its discretion in approving Birch Hill's application." *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, supra, 347 Conn. 324. The defendants, in turn, moved to dismiss the appeal for lack of subject matter jurisdiction, arguing that (1) "the [settlement agreement] was not a final decision in a contested case," and (2) "the plaintiff was not aggrieved by the [settlement agreement]." Id. In granting the defendants' motion to dismiss, the court did not reach the defendants' second argument, determining instead that the settlement agreement approving Birch Hill's application did not constitute a "final decision" for purposes of § 4-183 (a). Id. The plaintiff appealed to the Appellate Court, which affirmed the trial court's judgment, holding that the settlement agreement was not a final decision.[6] *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, 207 Conn. App. 397, 416, 263

or . . . Medicaid/government payor patients . . . ."

[4] General Statutes § 19a-641 provides in relevant part: "Any health care facility or institution and any state health care facility or institution aggrieved by any final decision of said unit under the provisions of sections 19a-630 to 19a-639e, inclusive, may appeal from such decision in accordance with the provisions of section 4-183 . . . ."

[5] General Statutes § 4-183 (a) provides in relevant part that "[a] person who has exhausted all administrative remedies available within the agency and *who is aggrieved by a final decision* may appeal to the Superior Court . . . ." (Emphasis added.)

[6] The Appellate Court did not address the defendants' additional ground for dismissal now at issue because it concluded "that the court did not err in dismissing the plaintiff's appeal for lack of subject matter jurisdiction on the ground that there was no final decision from which the plaintiff could appeal." *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, supra, 207 Conn. App. 422 n.22.

A.3d 935 (2021), aff'd, 347 Conn. 317, 297 A.3d 531 (2023). We granted the plaintiff certification to appeal and reversed the Appellate Court's judgment, holding that the settlement agreement was a final decision, and remanded the case for further proceedings. *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, supra, 347 Conn. 335.

On remand, the defendants again moved to dismiss the plaintiff's administrative appeal for lack of subject matter jurisdiction, reiterating their prior alternative ground for dismissal, which was that the plaintiff lacked standing to appeal because it was "not aggrieved by [the department's] decision . . . ." See footnote 6 of this opinion. The trial court agreed with the defendants and dismissed the plaintiff's appeal, holding that the plaintiff was not statutorily or classically aggrieved for purposes of appeal under § 4-183 because it lacked a legal interest (1) within the zone of interests protected by § 19a-639 (a), which governs certificate of need applications, and (2) as an intervenor in an administrative proceeding. The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff contends that the trial court incorrectly held that it was not aggrieved by, or in other words, did not have standing to contest, the department's approval of Birch Hill's certificate of need application through a settlement agreement. See, e.g., *In re Ava W.*, 336 Conn. 545, 554, 248 A.3d 675 (2020) (" '[a]ggrievement, in essence, is appellate standing' "). The plaintiff argues that, as an existing addiction services facility, it has statutory standing to contest the department's decision approving Birch Hill's application to establish a competing substance abuse treatment facility. Next, the plaintiff argues that, as an intervenor, it is classically aggrieved as a result of the "procedural

irregularities" that occurred in the negotiations underlying the settlement agreement, which the plaintiff claims were "fundamentally unfair." In response, the defendants submit that the plaintiff, as an existing market competitor, lacks standing. The defendants further contend that intervenor status is insufficient, on its own, to confer standing, and that any alleged procedural irregularities at the administrative level cannot constitute aggrievement for purposes of appeal. We agree with the defendants that the plaintiff was neither statutorily nor classically aggrieved and, therefore, the trial court lacked jurisdiction over the plaintiff's appeal.

"It is fundamental that appellate jurisdiction in administrative appeals is created only by statute and can be acquired and exercised only in the manner prescribed by statute. . . . An appeal from an administrative decision of the department is governed by . . . the Uniform Administrative Procedure Act; General Statutes [§ 4-166 et seq.]." (Citations omitted; internal quotation marks omitted.) *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 341, 663 A.2d 1011 (1995). "Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal. . . . It is [therefore] fundamental that, in order to have standing to bring an administrative appeal, a person must be aggrieved." (Citation omitted; internal quotation marks omitted.) Id., 342. "Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . . Aggrievement does not demand cer-

tainty, only the possibility of an adverse effect on a legally protected interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Lewis* v. *Planning & Zoning Commission,* 275 Conn. 383, 391, 880 A.2d 865 (2005).

Regarding statutory aggrievement, this court has long held that a party's legal interest must fall within the "zone of interests" of the statute at issue for that "interest [to be] protected by that legislation." (Internal quotation marks omitted.) Id. "It has been [noted] that the zone of interests test bears a family resemblance to the scope of the risk doctrine in the law of torts. . . . In tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of [statutory] standing, it is not enough that a party is injured by an act or omission of another party. The defendant must also have violated some duty *owed to the plaintiff.*" (Citation omitted; emphasis in original; internal quotation marks omitted.) *McWeeny* v. *Hartford,* 287 Conn. 56, 65, 946 A.2d 862 (2008); see, e.g., *United Cable Television Services Corp.* v. *Dept. of Public Utility Control,* supra, 235 Conn. 344–45 ("in considering whether a plaintiff's interest has been injuriously affected by the granting of a certificate of public convenience and necessity, we have looked to whether the injury he complains of (*his* aggrievement, or the adverse effect *upon him*) falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for [the] complaint" (emphasis in original; internal quotation marks omitted)). We exercise plenary review over the plaintiff's claim that it is both statutorily and classically aggrieved because

subject matter jurisdiction is a question of law. See, e.g., *Wheelabrator Lisbon, Inc.* v. *Dept. of Public Utility Control*, 283 Conn. 672, 685, 931 A.2d 159 (2007).

I

We begin with the plaintiff's statutory aggrievement claim. It is well established that, "[a]s a general rule, allegations that a governmental action will result in competition harmful to the complainant's business would not be sufficient to qualify the complainant as an aggrieved person." (Internal quotation marks omitted.) *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 26 n.14, 901 A.2d 649 (2006). This is true as a matter of administrative law as well as common law. See, e.g., *State Medical Society* v. *Connecticut Board of Examiners in Podiatry*, 203 Conn. 295, 302, 524 A.2d 636 (1987) ("[i]t is a principle of common law that [o]ne who causes loss of business or occupation to another merely by engaging in a business or occupation in good faith is not liable to the other for the loss so caused, though he knows that the loss will result" (internal quotation marks omitted)). However, this court has remarked that the legislature has, at times, conferred standing on market competitors by statute, creating a limited exception to this general common-law rule. See *Light Rigging Co.* v. *Dept. of Public Utility Control*, 219 Conn. 168, 176–77, 592 A.2d 386 (1991). The plaintiff acknowledges the general rule but contends that the legislature has created a statutory exception to that rule because § 19a-639 (a) "arguably, if not plainly, creates a zone of interests that includes existing certifi[ed] health service providers, [given that] § 19a-639 (a), through the factors on which it mandates [the department] to make findings, considers the [financial] impact a [certificate of need] will have on existing health care facilities." Therefore, the plaintiff argues, it has standing because the plain language of § 19a-639 (a) encompasses market competitors in the same way that the statute at issue in *Light*

*Rigging Co.* did; see General Statutes (Rev. to 1985) § 16-286;[7] taking it beyond the general rule that market competitors lack aggrievement. We disagree.

As a preliminary matter, we reject the plaintiff's characterization of *Light Rigging Co.* as determinatively relying on "the certification framework and the required consideration of public need" rather than "the statutory consideration of other facilities . . . ." (Footnote omitted.) In that case, the Department of Public Utility Control[8] granted the plaintiff's request for a certificate of need authorizing motor carrier status. See *Light Rigging Co.* v. *Dept. of Public Utility Control*, supra, 219 Conn. 169–70. This court held that the plaintiff had standing to contest the Department of Public Utility Control's issuance of a certificate of need authorizing motor carrier status to a market competitor because § 16-286, which governed motor carrier authorizations,

---

[7] General Statutes (Rev. to 1985) § 16-286 provides in relevant part: "In determining whether or not such a certificate shall be granted, the department of public utility control shall take into consideration *the existing motor transportation facilities and the effect upon them of granting such certificate*, the public need for the service the applicant proposes to render, the suitability of the applicant, or the suitability of the management if the applicant is a corporation, the financial responsibility of the applicant, the ability of the applicant efficiently to perform the service for which authority is requested, the condition of and effect upon the highways involved and the safety of the public using such highways. The department shall take into consideration such recommendations as to motor transportation facilities, or highways, or the effect of granting such certificate upon either of them, or the safety of the public using such highways, as the commissioner of transportation may submit to it in writing within thirty days of the conclusion of the hearing thereon. . . ." (Emphasis added.)

All references in this opinion to § 16-286 are to the 1985 revision of the statute.

[8] Effective July 1, 2011, the legislature designated the Public Utilities Regulatory Authority within the Department of Energy and Environmental Protection as the replacement for the Department of Public Utility Control. See *Kleen Energy Systems, LLC* v. *Commissioner of Energy & Environmental Protection*, 319 Conn. 367, 370 n.1, 125 A.3d 905 (2015). In the interest of simplicity, we refer in this opinion to the Department of Public Utility Control as it was known at the time.

encompassed market competitors within its zone of interests. Id., 176–78. The legislature, by statute, expressly provided that the agency, when determining whether to grant the certificate, must consider "*the* existing motor transportation facilities and the effect upon *them* of granting such certificate, [and] the public need for the service the applicant proposes to render . . . ." (Emphasis added; internal quotation marks omitted.) Id., 176. Indeed, although this court stated in *Light Rigging Co.* that, "[b]ecause § 16-286 expressly requires the [Department of Public Utility Control] to consider public need for the services to be rendered by an applicant before granting a certificate . . . existing certificate holders are entitled to be free of competition for which no need has been shown"; id., 177; our cases since have emphasized, consistent with *Light Rigging Co.*, that neither the consideration of public necessity nor the question of whether the complainant is an existing certificate holder, without more, confers statutory aggrievement on market competitors.

For example, in *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, 226 Conn. 105, 627 A.2d 1257 (1993), this court held that a market competitor, based on that status alone, was not statutorily aggrieved under General Statutes (Rev. to 1991) § 19a-154 (a),[9] even though

[9] General Statutes (Rev. to 1991) § 19a-154 (a) provides in relevant part: "Any health care facility or institution . . . shall . . . submit to the commission a request for permission to undertake such function or service or increase its staff. The commission shall make such review of the proposal as it deems necessary, including, in the case of a proposed transfer of ownership or control prior to initial licensure, such factors as, but not limited to, the financial responsibility and business interests of the transferee and the ability of the institution to continue to provide needed services, in the case of the introduction of an additional function or service, ascertaining the availability of such service or function at other inpatient rehabilitation facilities, health care facilities or institutions or state health care facilities or institutions within the area to be served, the need for such service or function within such area and any other factors which the commission deems relevant to a determination of whether the facility or institution is justified in introduc-

that statute considered public need, because "[t]here is no specific statutory requirement . . . on the part of [the defendant] to consider the impact of an application on existing health care facilities." Id., 125. In response to the plaintiff's argument analogizing § 19a-154 (a) to § 16-286, the statute at issue in *Light Rigging Co.*, we noted that "[the Department of Public Utility Control] was specifically required by [§ 16-286] to consider the effect of granting a new certificate of public convenience and necessity on the existing competitors who already held certificates . . . ." Id., 124. Similarly, in *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, supra, 235 Conn. 334, this court held that a market competitor lacked standing under General Statutes (Rev. to 1993) § 16-331 because, although the statute contemplated public need, it did not further expressly "insulate existing businesses from potential market saturation" in addition to considering public need, as did the statute at issue in *Light Rigging Co.*[10] Id., 352.

ing such additional functions or services into its program or increasing its staff. . . ."

All references in this opinion to § 19a-154 are to the 1991 revision of the statute.

[10] General Statutes (Rev. to 1993) § 16-331 provides in relevant part: "(b) In determining whether a new certificate shall be issued or an existing certificate transferred, the department of public utility control *shall only take into consideration the suitability of the applicant or, if the applicant is a corporation, of its management, the financial responsibility of the applicant and the ability of the applicant to perform efficiently the service for which authority is requested.* . . .

\* \* \*

"(d) (1) . . . The department shall have the discretion to determine the appropriate length of a franchise term, initial, renewal or transfer, and in making its decision shall consider the following without limitation: (A) The operator's past performance in terms of meeting the needs of the cable-related community; (B) the operator's past performance in terms of complying with the material terms of the existing franchise; (C) the operator's compliance with the department regulations and the general statutes; (D) the ability of the operator's management to properly operate the franchise; (E) the operator's effectiveness in dealing with consumer requests, complaints and billing questions or disputes; (F) the operator's effectiveness in

Our case law has further clarified that statutory aggrievement does not turn on whether a plaintiff, seeking to challenge a market competitor's approved certificate of need application, already has obtained an approved certificate of need. Indeed, the plaintiff in *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 699 A.2d 142 (1997), which already held a license to provide ambulance services under General Statutes (Rev. to 1993) § 19a-180,[11] sought to appeal from the Superior Court's judgment dismissing its appeal, which had challenged the issuance of a license to a market competitor under the same statute. Id., 154–55. We held that the plaintiff was not aggrieved, notwithstanding that it held an existing license, and that § 19a-

dealing with the advisory council; (G) the quality and diversity of the operator's programming; (H) the quality of the operator's public access, as described in subdivision (3), educational access and governmental access programming; (I) the quality of the operator's equipment and facilities; (J) the operator's proposals for future extensions and upgrading to technologically advanced equipment, facilities and systems; (K) the operator's past performance in terms of meeting the needs of the cable-related community by providing African-American and Hispanic programming; and (L) the operator's good faith efforts, as determined by the department, to provide service, when practicable, to all customers within the service area.

\* \* \*

"(h) Each applicant for a certificate shall finance the reasonable costs of a community needs assessment, conducted by an independent consultant and developed jointly by the department, the Office of Consumer Counsel, the local advisory council and the applicant, which assessment shall analyze a community's future cable-related needs . . . ." (Emphasis added.)

[11] General Statutes (Rev. to 1993) § 19a-180 provides in relevant part: "No person shall operate any ambulance service, rescue service or management service without either a license or a certificate issued by the Office of Emergency Medical Services. . . . A certificate shall be issued to any volunteer or municipal ambulance service which shows proof satisfactory to the commissioner that it meets the minimum standards of the commissioner in the areas of training, equipment and personnel. . . . Upon determination by the Office of Emergency Medical Services that an applicant is financially responsible, properly certified and otherwise qualified to operate a commercial ambulance service, the Office of Emergency Medical Services shall issue a license effective for one year to such applicant. . . ."

All references in this opinion to § 19a-180 are to the 1993 revision of the statute.

180 directed the agency that granted the license to consider public need. See id., 164.

The plaintiff in the present case nevertheless contends that *New England Rehabilitation Hospital of Hartford, Inc.*, *United Cable Television Services Corp.*, and *Med-Trans of Connecticut, Inc.*, are distinguishable because, in *New England Rehabilitation Hospital of Hartford, Inc.*, "[t]he plaintiff was not a certificated operator," the statute in *United Cable Television Services Corp.* "limited the zone of interests to the public at large and did not consider competitors," and the statute in *Med-Trans of Connecticut, Inc.*, makes "no mention of other providers or even much mention of considering public need." We are not persuaded. The common denominator in each of these cases is that market competitors lacked aggrievement because the statutes at issue did not expressly contemplate harm to such competition within their zones of interest. Because the exception specified in *Light Rigging Co.* principally relied on the legislature's directive that the agency consider existing health care facilities of market participants, we reject the plaintiff's argument in the present case that the plaintiff's standing in *Light Rigging Co.* derived from "the certification framework and the required consideration of public need . . . ."

Therefore, the operative question before this court is whether the statute at issue in this case, § 19a-639 (a), directs the agency to consider market competitors in a manner akin to § 16-286, the statute at issue in *Light Rigging Co.* We hold that it does not. To establish a new health care facility in Connecticut, an entity must first apply to the department for a certificate of need pursuant to § 19a-639 (a). See General Statutes (Rev. to 2017) § 19a-638. In determining whether to grant that application, the legislature has directed the department to consider, in relevant part, "[t]he relationship of the proposed project to the state-wide health care facilities

and services plan . . . [w]hether there is a clear public need for the health care facility . . . [w]hether the applicant has satisfactorily demonstrated how the proposal will impact the financial strength of the health care system in the state . . . [w]hether the applicant has satisfactorily demonstrated how the proposal will improve quality, accessibility and cost effectiveness of health care delivery in the region, including, but not limited to, provision of or any change in the access to services for Medicaid recipients and indigent persons . . . [t]he applicant's past and proposed provision of health care services to relevant patient populations and payer mix, including, but not limited to, access to services by Medicaid recipients and indigent persons . . . [w]hether the applicant has satisfactorily identified the population to be served by the proposed project and satisfactorily demonstrated that the identified population has a need for the proposed services . . . [t]he utilization of existing health care facilities and health care services in the service area of the applicant . . . [and] [w]hether the applicant has satisfactorily demonstrated that the proposed project shall not result in an unnecessary duplication of existing or approved health care services . . . ." General Statutes (Rev. to 2017) § 19a-639 (a) (2) through (9).

Unlike § 16-286, which was at issue in *Light Rigging Co.*, no language in § 19a-639 (a) expressly specifies an exception to the general rule that "allegations that a governmental action will result in competition harmful to the complainant's business" are insufficient to demonstrate aggrievement. (Internal quotation marks omitted.) *West Farms Mall*, *LLC* v. *West Hartford*, supra, 279 Conn. 26 n.14. The statutory considerations that even arguably come closest to aligning with the plaintiff's assertion that § 19a-639 (a) protects market participants from competition are "[t]he relationship of the proposed project to the state-wide health care facilities

and services plan"; General Statutes (Rev. to 2017) § 19a-639 (a) (2); and "[w]hether the applicant has satisfactorily demonstrated how the proposal will impact the financial strength of the health care system in the state . . . ." General Statutes (Rev. to 2017) § 19a-639 (a) (4). The plaintiff characterizes these factors as involving "the financial health of other providers," such as itself, because § 19a-639 (a) (3) directs the department to consider "[w]hether there is a clear public need for the health care facility . . . ." But the plain language of these statutory factors refers to the applicant's prospective impact on the state health care system more generally, not, as the plaintiff suggests, the financial impact on individual market competitors *within* that larger health care system. See General Statutes (Rev. to 2017) § 19a-639 (a) (2) ("the state-wide health care facilities and services plan"); General Statutes (Rev. to 2017) § 19a-639 (a) (4) ("the health care system in the state").

In comparison, the statute at issue in *Light Rigging Co.* expressly contemplated market competitors, specifically directing consideration of "*the* existing motor transportation facilities and the *effect upon them* of granting such certificate . . . ." (Emphasis added.) General Statutes (Rev. to 1985) § 16-286. Section 19a-639 (a) contains no such requirement. In fact, the very language that the plaintiff advances in support of its argument demonstrates that § 19a-639 (a) directs consideration, first and foremost, of the public's general need for health care facilities, not any individual market competitor's financial interests. Although we agree that § 19a-639 requires the department to consider the proposed facility's impact on other state health care facilities, it does so in the interest of ensuring that the public's general need for health care is met and does not contain language manifesting a legislative intent to protect the plaintiff, or any market competitor, from any financial

impact that may result from the issuance of a certificate of need for a new facility. Given the language in § 19a-639 (a), the plaintiff is no more aggrieved than any other member of the public by the department's approval of Birch Hill's certificate of need application. Considering that "[a] statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created"; *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 234 Conn. 624, 640, 662 A.2d 1251 (1995); and that, "[w]hen [the] legislature has sought to include effects on existing businesses as a criterion for determining whether to issue a certificate, it has demonstrated its ability to do so"; *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, supra, 235 Conn. 347; we reject the plaintiff's assertion that it "arguably" falls within the zone of interests protected by § 19a-639 (a). We decline to import language into § 19a-639 (a) that would, without legislative approval, exempt the plaintiff from the general rule, which stems from the common law; see *State Medical Society* v. *Connecticut Board of Examiners in Podiatry*, supra, 203 Conn. 302; that statutory zones of interests do not encompass market participants. See, e.g., *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, supra, 343.

## II

The plaintiff next claims that it is classically aggrieved because, as an intervenor, it was entitled to a "fundamentally fair proceeding" free from procedural "irregularities."[12] The plaintiff's argument, in short, is that,

---

[12] The plaintiff misunderstands that procedural irregularities that do not involve " 'due notice of the hearing, and . . . the right to produce relevant evidence or to cross-examine witnesses' "; *Grimes* v. *Conservation Commission*, 243 Conn. 266, 274, 703 A.2d 101 (1997); do not constitute fundamental unfairness. In other words, fundamental fairness concerns the hearing itself. The plaintiff does not dispute that it was afforded full intervenor rights at the two public hearings on Birch Hill's application that took place prior to the settlement agreement, making its claim that it was deprived of a fundamentally fair proceeding following those hearings untenable.

when the hearing officer issued an order granting the plaintiff intervenor status, she also granted it the right to be "copied on all pleadings, correspondence and filings submitted from [that] point forward by [Birch Hill] until the issuance of a final decision by [the department]." It was fundamentally unfair, the plaintiff's argument continues, for the department and Birch Hill, "after some secret communications," to arrive at a settlement agreement that included the department's approval of Birch Hill's certificate of need application without notifying the plaintiff of any settlement discussions. We disagree that the plaintiff's intervenor status, which the hearing officer granted for a limited purpose, coupled with the defendants' settlement negotiations and ultimate settlement agreement, can form the basis of the plaintiff's classical aggrievement.

As we have stated before, "[m]ere status . . . as a party or a participant in a hearing before an administrative agency does not in and of itself constitute aggrievement for the purposes of appellate review. . . . If designation as a party in an agency proceeding were construed to be the equivalent of the right to be a party in a judicial proceeding, an agency's presiding officer would be vested with the authority to decide not only who could appear before the agency and what rights they would have during that proceeding, but also who could challenge an adverse decision of the agency in court." (Citations omitted; internal quotation marks omitted.) *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care*, supra, 226 Conn. 132–33; see also *Rose* v. *Freedom*

Indeed, consistent with *Grimes*, *FairwindCT, Inc.* v. *Connecticut Siting Council*, 313 Conn. 669, 99 A.3d 1038 (2014), which the plaintiff contends demonstrates that it may challenge "procedural irregularities to the extent they were fundamentally unfair," concerned evidentiary determinations that took place *during an agency hearing.* See id., 722–25.

*of Information Commission*, 221 Conn. 217, 221, 226, 602 A.2d 1019 (1992) (agency's denial of party status during agency proceeding pursuant to statute was not "intended to grant unfettered discretion to the [agency] to decide who can appeal the merits of its decisions"). Further, given the cost and time associated with litigation, the legislature jealously guards its prerogative to determine who may appeal from agency determinations to a court. See *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 756, 900 A.2d 1 (2006). Indeed, the right to pursue an administrative appeal derives from the legislature's prerogative to waive the state's sovereign immunity from suit and liability pursuant to § 4-183; see, e.g., *Republican Party* v. *Merrill*, 307 Conn. 470, 488 n.20, 55 A.3d 251 (2012); which the legislature also guards as a general matter. See, e.g., *Miller* v. *Egan*, 265 Conn. 301, 329, 828 A.2d 549 (2003) ("[S]tatutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity." (Internal quotation marks omitted.)); see also *Envirotest Systems Corp.* v. *Commissioner of Motor Vehicles*, 293 Conn. 382, 388, 978 A.2d 49 (2009) ("a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that . . . the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity" (internal quotation marks omitted)). Finally, the Uniform Administrative Procedure Act provides in relevant part that a hearing officer is "an individual appointed by an agency to conduct a hearing in an agency proceeding"; General Statutes § 4-166 (6); an agency includes "[a] department or officer authorized by law to make regulations or to determine contested cases"; General Statutes § 4-166 (1); and, "[u]nless precluded by law, a

contested case may be resolved by stipulation, agreed settlement, or consent order or by the default of a party." General Statutes § 4-177 (c).

The plaintiff has not articulated a cognizable "specific, personal and legal interest," which is necessary to demonstrate aggrievement. *Bingham* v. *Dept. of Public Works*, 286 Conn. 698, 705, 945 A.2d 927 (2008). It is well settled that the plaintiff's intervenor status in an administrative proceeding is not sufficient to confer standing to appeal from a decision on the merits. Moreover, the defendants' allegedly "secret" negotiations that resulted in the settlement agreement are not procedural irregularities that could constitute aggrievement as to the plaintiff because the legislature *encourages* resolving contested cases by "stipulation, agreed settlement, or consent order or by the default of a party." General Statutes § 4-177 (c). The fact that the hearing officer had granted the plaintiff the right, as an intervenor, to be copied on all pleadings supersedes neither the state's policy limiting administrative appeals to those who are aggrieved nor its statutes encouraging settlement agreements and dictating the limits of hearing officers' powers in the Uniform Administrative Procedure Act. See General Statutes §§ 4-166 and 4-177 (c). Indeed, even if the legislature immediately repealed these sections of the Uniform Administrative Procedure Act, and the allegedly "secret" communications that took place between the defendants *did* constitute procedural irregularities, the plaintiff would still lack standing. See, e.g., *Mayer* v. *Historic District Commission*, 325 Conn. 765, 793, 160 A.3d 333 (2017) (procedural irregularities resulting in loss of opportunity to be heard do not establish classical aggrievement). Perhaps the department would be wise to be more transparent with intervenors regarding settlement negotiations as a pol-

icy matter.[13] But that is neither for this court to decide[14] nor sufficient to confer standing on the plaintiff.

The judgment is affirmed.

In this opinion the other justices concurred.

---

[13] Indeed, courts have faced a similar challenge in the past regarding settlements in land use appeals that bypassed intervenors. See, e.g., *Sendak* v. *Planning & Zoning Commission*, 7 Conn. App. 238, 508 A.2d 781 (1986). In response to that circumstance, the legislature passed No. 84-227, § 1, of the 1984 Public Acts, codified at General Statutes § 8-8 (n), which requires that "no settlement between parties to a land use appeal shall be effective until a hearing has been held before the Superior Court and that court has approved the proposed settlement." *Brookridge District Assn.* v. *Planning & Zoning Commission*, 259 Conn. 607, 615–16, 793 A.2d 215 (2002).

[14] Other states' courts have noted that legislators would be well advised to implement additional regulations governing settlement agreements in administrative proceedings, given that "informal off-the-record communication . . . appears fraught with potential difficulties; at the very least, it appears prone to generate litigation on collateral issues like this one." *In re Odessa Corp.*, 179 Vt. 640, 642, 898 A.2d 1256 (2006).